PEOPLE *v.* MATTISON

1. CRIMINAL LAW — NEW TRIAL — TIMELY OBJECTION — ATTORNEY'S FAILURE.

A new trial may be granted, even though a timely objection was not made where the lawyer's mistake is of such serious proportion that, but for the mistake, the defendant might not have been convicted; however, a new trial will not be ordered if the appellate court is convinced that it would not serve a useful purpose.

2. CRIMINAL LAW—EVIDENCE—ELECTRONIC EAVESDROPPING.

Admission of a tape recording was not reversible error on the ground that the defendant's right against unreasonable searches and seizures had been violated where the defendant did not contend that the conversation had not occurred, and the tape added little, if anything, to the testimony, given at trial, of the other participant in the recorded conversation and the defendant's counsel failed to object to the recording's admission into evidence, because the defendant's conviction cannot be attributed either to the recording or to the defendant's attorney's failure to object to its admissibility (MCLA §§ 750-.539c, 750.539g[a]).

3. CRIMINAL LAW — EVIDENCE — ELECTRONIC EAVESDROPPING — NEW TRIAL — STATUTE.

Admission into evidence of a tape-recorded conversation between the defendant and a police informant, made without the defendant's consent, does not mandate a new trial even though part of the conversation was recorded before the effective date of a statute making such evidence admissible, where

REFERENCES FOR POINTS IN HEADNOTES
[1]  39 Am Jur, New Trial § 153.
[2, 3]  30 Am Jur 2d, Evidence §§ 436, 534, 598.
[4]  30 Am Jur, New Trial § 129.
[5]  21 Am Jur 2d, Criminal Law §§ 143–145.
[6]  29 Am Jur 2d, Evidence § 831.

the defendant did not object at trial to the recording's admission, the defendant admitted the conversation took place and the recording was relatively unimportant as evidence in the defendant's trial.

4. APPEAL AND ERROR—WEIGHT OF THE EVIDENCE—NEW TRIAL—DISCRETION.

An objection going to the weight of the evidence can be raised only by a motion for a new trial and a denial is reviewed on appeal for abuse of discretion but the trial judge's discretion was not invoked where no such motion was filed.

5. CRIMINAL LAW—ENTRAPMENT—APPEAL AND ERROR.

There is nothing for an appeal court to review when a claim of entrapment is first raised on appeal where there has been no hearing and finding of fact focused on the question of whether the criminal act originated in the mind of the defendant, whether the police merely provided an opportunity for the commission of the crime or whether the police instigated or induced it.

6. EVIDENCE—POLYGRAPH TEST—ADMISSIBILITY—PROBATIVE VALUE.

Trial judge correctly refused, as trier of the facts, to treat a report of a polygraph test offered and admitted into evidence by defendant without an objection from the prosecutor, which under present law is inadmissible, as being of probative value.

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 January 7, 1970, at Lansing. (Docket No. 6,198.) Decided September 28, 1970.

LaVaughn Mattison was convicted of conspiracy to pander and accept the earnings of a prostitute and attempted pandering. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,*

Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*James R. Buckley,* for defendant on appeal.

Before: LEVIN, P. J., and HOLBROOK and BRONSON, JJ.

LEVIN, P. J. The defendant, LaVaughn Mattison, appeals his conviction under a two count information of, count 1, conspiring to violate the statutes prohibiting pandering[1] and accepting the earnings of a postitute[2] and, count 2, attempted pandering.[3]

Mattison claims that the trial judge erred in admitting into evidence a recording purporting to reproduce a conversation among Mattison, Leland Hyde, who is the other alleged conspirator, and Carol Mason, a policewoman. He also claims that, because of the evidence of entrapment and a polygraph test, the judge, who tried the case without a jury, erred in finding him guilty.

The testimony of the people's witnesses tended to show that Mattison sought to persuade a woman to become a prostitute. She notified the county prosecutor's office of these overtures. It was arranged that she would inform Mattison that, although she was disinclined to accept his offer, a friend of hers had expressed interest in it. Mattison was twice scheduled to meet the friend, Miss Mason, at a bar but was unable to keep the appointments. Finally he agreed to meet Miss Mason at a local motel at 11:30 p.m. on March 9, 1967.

Other police officers in collaboration with Miss Mason, installed a microphone in the room where the

---

[1] MCLA § 750.455 (Stat Ann 1954 Rev § 28.710).
[2] MCLA § 750.457 (Stat Ann 1954 Rev § 28.712).
[3] MCLA § 750.92 (Stat Ann 1962 Rev § 28.287); MCLA § 750.455 (Stat Ann 1954 Rev § 28.710).

meeting was to take place and a recording device in an adjoining room. Miss Mason testified that the conversation in the motel room among herself, Mattison, and Hyde was almost exclusively concerned with a description of her prospective duties and compensation as a prostitute working for them.

The people then sought to introduce the recording in evidence. The officer who made the recording testified that only 80% or perhaps 90% of the words spoken in the motel room would be audible upon a playback of the recording. Mattison's lawyer objected to its introduction on the grounds that it lacked clarity, that the entire conversation was not audible, and that Miss Mason's testimony was the best evidence. These objections were overruled, the recording was admitted, and a portion was played. It corroborated her testimony.

Mattison took the stand and said that Miss Mason's testimony was essentially correct, but that his purpose was to persuade her to have sexual intercourse with him, not to have her go to work for him as a prostitute. He explained that he had found that he could frequently obtain the services of a prostitute without charge or at a reduced rate by telling her that he was interested in having her go to work for him, promising her clientele and emoluments, such as a new car and new clothes, and telling her, as he told Miss Mason, whom he had been led to believe was a prostitute, that in order to have a proper relationship with a girl working for him it is necessary that he have a sexual relationship with her. Several of Mattison's acquaintances testified that they had heard him use this ploy. There was also testimony that Mattison and others had sexual intercourse with the informant and that her telephone call to the prosecutor's office followed a fall-

ing out between her and Mattison and was due to vindictiveness on her part.

On appeal it is urged that the admission of the recording violated Mattison's Fourth Amendment right to be secure against unreasonable searches and seizures and his Fifth Amendment right not to be compelled to be a witness against himself.

Mattison's lawyer did not move to suppress the recording. Nor did he object at the trial on constitutional grounds to its introduction in evidence. In *People* v. *Degraffenreid* (1969), 19 Mich App 702, 716, we said:

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite the failure to have preserved the error by timely objection, grant a new trial."

We also said, however, that where an issue has not been preserved by timely objection, a new trial will not be ordered if the Court is convinced that it would not serve a useful purpose.

In this case the defense was not that the conversation related by Miss Mason and reflected in the recording had not in fact occurred. The recording added little, if anything, to Miss Mason's testimony. Mattison's conviction cannot, therefore, be attributed either to the recording or to a mistake of his lawyer in having failed to challenge the admissibility of the recording on constitutional grounds. The judge simply didn't believe Mattison's explanation. Under the circumstances we note, but neither consider nor decide, the constitutional question.[4]

---

[4] In *Katz* v. *United States* (1967), 389 US 347 (88 S Ct 507, 19 L Ed 2d 576), the United States Supreme Court ruled that antecedent judicial authorization was a constitutional precondition of the kind of electronic surveillance there involved, namely, the attachment of

Mattison alternatively argues that the recording should be excluded because it was obtained in viola-

an electronic recording device to the outside of a public telephone booth from which the defendant placed calls transmitting wagering information. In *Desist* v. *United States* (1969), 394 US 244 (89 S Ct 1030, 22 L Ed 2d 248), *reh. den.* 395 US 931 (89 S Ct 1766, 23 L Ed 2d 251), the Court held that the *Katz* decision governed electronic surveillance after December 18, 1967, the date on which *Katz* was decided. (The meeting in the motel took place on March 9–10, 1967.)

A number of courts have held that the search warrant requirement enunciated in *Katz* does not apply to situations where one party to the conversation has consented to having it electronically monitored. See *Dancy* v. *United States* (CA5, 1968), 390 F2d 370; *United States* v. *Jackson* (CA2, 1968), 390 F2d 317; *Holt* v. *United States* (CA10, 1968), 404 F2d 914.

The Court of Appeals for the Seventh Circuit has ruled, however, following an *en banc* hearing, that a defendant's Fourth Amendment rights were infringed when narcotics agents heard his conversations with the informant by means of an electronic device concealed on the informant. The court concluded it was immaterial whether one party to the conversation was "cognizant" of the use of the device stating that, "The crucial fact in each case is that the respective speakers did not consent to the overhearing of their statements and that the conversations were overheard by third persons uninvited by the speaker." *United States* v. *White* (CA7, 1969), 405 F2d 838, 843.

The *White* Court distinguished *Lopez* v. *United States* (1963), 373 US 427 (83 S Ct 1381, 10 L Ed 2d 462), by interpreting it to apply only where the informant testifies at the trial about the conversation and the recording is introduced for the limited purpose of corroboration. *Lopez* has also been distinguished on the ground that the defendant there knew he was dealing with a government agent, as differentiated from the typical case, as here, where the defendant does not know that he is speaking to an informer in the employ of the police. *On Lee* v. *United States* (1952), 343 US 727 (72 S Ct 967, 96 L Ed 1270), factually similar to *White* in that the informer did not take the stand, was treated as not dispositive on the ground that subsequent Supreme Court decisions had eroded the trespass analysis employed there.

The United States Supreme Court granted *certiorari* in *White* on April 7, 1969, 394 US 957 (89 S Ct 1305, 22 L Ed 2d 559). The case was argued but not decided before the Court adjourned in June, 1970 and it will be scheduled for reargument when the Court reconvenes in October, 1970. The Court's decision will not necessarily reach the question of whether a defendant's Fourth Amendment rights are violated when, without prior judicial authorization, his conversations with an informer are overheard by means of an electronic device carried by the informer, because in *White* the government's evidence showed only that the informer was "cognizant" of the eavesdropping, not that he had consented, and also because in White, as in this case of *Mattison*, the monitoring occurred before the date *Katz* was decided.

tion of MCLA § 750.539c (Stat Ann 1970 Cum Supp § 28.807[3]) and related sections prohibiting eavesdropping on a private conversation "without the consent of all parties thereto." However, MCLA § 750.539g (Stat Ann 1970 Cum Supp § 28.807[7]) lists several exceptions to the coverage of the act: "This act shall not be construed to prohibit:  (a) Eavesdropping or surveillance not otherwise prohibited by law by a peace officer or his agent of this state or federal government while in the performance of his duties."

The exception for surveillance by police officers was added by PA 1966, No 319, which became effective March 10, 1967. The conversation began at 11:30 p.m. on March 9, 1967, and did not conclude until after 1 a.m. March 10, 1967. No objection based on the statute was made at the trial. If the defendant had called the judge's attention to the effective date, and that it was after the conversation had commenced, he might have excluded the recording. To now recognize the defendant's statutory claim and to require a new trial is not called for in the light of Mattison's concession that the conversation took place and the consequent relative unimportance of the recording.

Finally, Mattison contends that the verdict was contrary to the great weight of the evidence. His argument is that he was entrapped by the police into making the proposals to Miss Mason. He points to the fact that the police twice arranged for Miss Mason, their decoy, to meet him at a bar. When those plans miscarried, they were instrumental in arranging an encounter at the motel where he made the statements upon which he was convicted.

An objection going to the *weight* of the evidence can be raised only by a motion for a new trial. On

appeal, we review a denial for abuse of discretion.[5] Here, no motion for a new trial was filed. The trial judge's discretion was, therefore, not invoked.[6]

Mattison's lawyer did not at the time of trial claim entrapment. This is understandable because the defense was based on a contrary premise, namely, that it was Mattison who was attempting to entice Miss Mason to engage in sexual intercourse and the conversation with her was an elaborate prelude to that desired end. Without a claim of entrapment and a hearing focused on the question of whether the criminal act originated in the mind of the defendant[7]—

---

[5] *Murchie* v. *Standard Oil Company* (1959), 355 Mich 550, 558; *Termaat* v. *Bohn Aluminum & Brass Company* (1961), 362 Mich 598.

[6] See *People* v. *Powers* (1935), 272 Mich 303, 310.

[7] *People* v. *Smith* (1941), 296 Mich 176; *People* v. *England* (1913), 221 Mich 607; *People* v. *Ovalle* (1968), 10 Mich App 540.

See *Sherman* v. *United States* (1958), 356 US 369 (78 S Ct 819, 2 L Ed 2d 848), where a unanimous Court ruled that the facts there showed entrapment as a matter of law. Mr. Justice Frankfurter, in an opinion signed by three other justices, criticized as unrevealing the traditional tests of whether the "intention" to commit the crime originated with the defendant or government officers and whether the criminal conduct was the product of the creative activity of law enforcement officers (p 382): "Of course in every case of this kind the intention that the particular crime be committed originates with the police, and without their inducement the crime would not have occurred." He added (pp 382, 383, 384):

"The intention referred to, therefore, must be a general intention or predisposition to commit, whenever the opportunity should arise, crimes of the kind solicited, and in proof of such a predisposition evidence has often been admitted to show the defendant's reputation, criminal activities, and prior disposition. The danger of prejudice in such a situation, particularly if the issue of entrapment must be submitted to the jury and disposed of by a general verdict of guilty or innocent, is evident. The defendant must either forego the claim of entrapment or run the substantial risk that, in spite of instructions, the jury will allow a criminal record or bad reputation to weigh in its determination of guilt of the specific offense of which he stands charged. * * *

"This does not mean that the police may not act so as to detect those engaged in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation. It does mean that in holding out inducements they should act in such a manner as is likely to induce to the commission of crime only these persons and not others who would normally avoid crime and through self-struggle resist ordinary temptations. This

whether the police merely provided an opportunity for the commission of the crime or whether they instigated or induced it[8]—and findings of fact on that issue,[9] we have nothing before us to review.

A report of a polygraph examination prepared by a private operator favorable to Mattison's claim of innocence was introduced in evidence as a defense exhibit without objection by the people.[10]   The trial judge, however, correctly ruled that he, as trier of the facts, was not obliged to treat such evidence, which under present law is inadmissible, as having probative value.[11]

Affirmed.

All concurred.

---

test shifts attention from the record and predisposition of the particular defendant to the conduct of the police and the likelihood, objectively considered, that it would entrap only those ready and willing to commit crime."

See, generally, cases and articles collected in Hall, Kamisar, LaFave, Israel, Modern Criminal Procedure (3d ed), ch 7, p 403.

[8] "Entrapment, so-called, is a relatively simple and very desirable concept which was unfortunately misnamed with some resulting confusion.   It is socially desirable for criminals to be apprehended and brought to justice and there is nothing whatever wrong or out of place in setting traps to catch those bent on crime; what the state cannot tolerate is having its officers, who are charged with the duty of enforcing the law, instigate crime by implanting criminal ideas in innocent minds and thereby bringing about offenses that otherwise would never have been perpetrated."   Perkins on Criminal Law (2d ed), ch 10, § 9, p 1031.

[9] *People* v. *George Scott* (1970), 21 Mich App 217; *People* v. *Beaudoin* (1967), 7 Mich App 461, 464.

[10] After Mattison's conviction he was given a polygraph examination by the State police.   The results, which were presented at the time of sentencing, tended to show that he was attempting to deceive the examiner.

[11] *Stone* v. *Earp* (1951) 331 Mich 606; *People* v. *Frechette* (1968), 380 Mich 64; *People* v. *Paul F. Baker* (1967), 7 Mich App 471, 476; *People* v. *Brocato* (1969), 17 Mich App 277, 292.