PEOPLE v JACKSON

PEOPLE v HENDERSON

Docket Nos. 62210, 62425. Submitted October 19, 1982, at Detroit.—
    Decided March 29, 1983.

    Following a joint trial in the Detroit Recorder's Court, Michael F.
    Sapala, J., defendant Humphrey Jackson was convicted of one
    count of first-degree criminal sexual conduct and one count of
    third-degree criminal sexual conduct and defendant John Hen-
    derson was convicted of one count of first-degree criminal
    sexual conduct. A third person, Detreich Burris, was also
    charged with two counts of first-degree criminal sexual conduct;
    however, he was not tried, having apparently fled the court's
    jurisdiction. Defendants appeal. The Court of Appeals consoli-
    dated their appeals. *Held:*

    CYNAR, J., concluded:

    1. The allowance of the prosecutor's references to Burris's
    flight from the jurisdiction did not result in reversible error.
    The references to "the man who's not here" were necessary to
    avoid confusion and to help the complainant keep her testi-
    mony in order. Further, Burris's flight was so closely connected
    to the transaction as to be admissible under the res gestae
    exception to the general prohibition of the admission of evi-

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 7] 16 Am Jur 2d, Conspiracy § 46 *et seq.*
    21 Am Jur 2d, Criminal Law §§ 228, 238.
    29 Am Jur 2d, Evidence §§ 708, 719.
[2] 65 Am Jur 2d, Rape §§ 4-6.
[3] 75 Am Jur 2d, Trial § 306.
    Propriety, and prejudicial effect of, comments by counsel vouching
        for credibility of witness. 81 ALR2d 1240.
[4] 5 Am Jur 2d, Appeal and Error § 833.
    58 Am Jur 2d, New Trial §§ 19, 20.
[5] 21A Am Jur 2d, Criminal Law §§ 752, 985.
    Modern status of rules and standards in state courts as to adequacy
        of defense counsel's representation of criminal client. 2 ALR4th
        27.
[6, 7] 29 Am Jur 2d, Evidence §§ 496, 497.
[8] 5 Am Jur 2d, Appeal and Error § 737.

dence of flight of a codefendant against another codefendant. The facts indicate that the complainant was still under the control of Burris and the defendants when Burris left the scene to make a telephone call. Although the physical attacks on the complainant had then cesed, the force which is an element of these forms of criminal sexual conduct still existed since Burris took the key to the room within which the complainant's clothes were locked and the complainant was only able to escape by risking her safety by climbing through a window.

2. The prosecutor did not improperly attempt to vouch for the complainant's veracity based on the prestige of his office.

3. Defendant Henderson was not denied effective assistance of counsel.

4. It cannot be held that but for defense counsel's failure to move for a new trial the defendant might not have been convicted since a motion for new trial on the ground that the verdict is against the great weight of the evidence must be made after the verdict is rendered.

BRONSON, J., concurred in the result only.

Affirmed.

R. M. MAHER, P.J., dissented and would hold that evidence of Burris's flight was not admissible under either the exception to the hearsay rule or the res gestae exception. He would not agree that Burris's flight was a part of the res gestae. He would hold that the prosecutor improperly used evidence of Burris's flight to impute guilt to the defendants and that such prejudice could not have been cured by a timely requested instruction. He would reverse the defendant's convictions.

OPINION BY CYNAR, J.

1. CRIMINAL LAW — FLIGHT OF ACCOMPLICES — EVIDENCE — RES GESTAE.

   *It cannot be shown, as against an accused on trial, that an accomplice or a co-conspirator has fled or escaped since the commission of the crime, except when such escape is so closely connected with the transaction as to be admissible as res gestae; the res gestae exception to the general prohibition of the admission of evidence of flight of a codefendant against another is rather narrow but has been applied where both defendants have fled or where the flight of a co-conspirator occurred while a conspiracy to rob was still in progress.*

2. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — FORCE.

   *The force which is an element of first-degree and third-degree*

*criminal sexual conduct still exists, although the physical attacks on the complainant have ceased, where the facts of a case indicate that the complainant is still under the control of her attackers.*

3. CRIMINAL LAW — WITNESSES — PROSECUTORIAL COMMENT.

*A prosecutor may not attempt to vouch for a complainant's veracity based on the prestige of his office.*

4. CRIMINAL LAW — APPEAL — WEIGHT OF EVIDENCE — NEW TRIAL.

*An objection going to the weight of the evidence can be raised only by a motion for a new trial; a motion for a new trial on the ground that the verdict is against the great weight of the evidence must be made after the verdict is rendered, therefore, it cannot be held in an action wherein a defendant contends that his counsel's failure to move for a new trial on the ground that the verdict was against the great weight of the evidence denied him effective assistance of counsel that but for the defense counsel's failure to so move the defendant might not have been convicted.*

5. ATTORNEY AND CLIENT — ASSISTANCE OF COUNSEL.

*A mistake made by defense counsel must be of such magnitude that, but for the mistake, the defendant might not have been convicted before such mistake may support a finding of ineffective assistance of counsel.*

DISSENT BY R. M. MAHER, P.J.

6. EVIDENCE — CRIMINAL LAW — FLIGHT OF ACCOMPLICES — HEARSAY — RES GESTAE.

*Evidence of the flight of a defendant's alleged accomplice is not admissible at the defendant's trial where such evidence does not fit within any of the exceptions to the hearsay rule and where such flight was not part of the res gestae of the crime with which defendant is charged.*

7. EVIDENCE — CRIMINAL LAW — FLIGHT OF ACCOMPLICES — HEARSAY — ADMISSIONS — RULES OF EVIDENCE.

*Evidence of the flight of a defendant's alleged accomplice is not admissible at the defendant's trial as an admission by a party-opponent where such evidence of flight is not a statement as defined in the hearsay rule and where such flight was not nonverbal conduct intended by the accomplice as an assertion (MRE 801, subds [a], [d][2][E]).*

8. Criminal Law — Criminal Sexual Conduct — Appeal — Evidence — Flight of Accomplices.

   *A defendant's conviction for first-degree and third-degree criminal sexual conduct should be reversed where the prosecutor improperly used evidence of an accomplice's flight to impute guilt to the defendant and where the resulting prejudice could not have been cured by a timely requested instruction.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*James A. Waske* for John Henderson.

*Gerald M. Lorence* for Humphrey Jackson.

Before: R. M. Maher, P.J., and Bronson and Cynar, JJ.

Cynar, J. Defendants Jackson and Henderson were charged along with a third person, Detreich Burris, with two counts of criminal sexual conduct (CSC) in the first degree. MCL 750.520b; MSA 28.788(2). Henderson was bound over on one count only. After a joint jury trial with Henderson, Jackson was convicted of one count of first-degree CSC and one count of third-degree CSC and sentenced to concurrent prison terms of 4 to 15 years for each count. Henderson was convicted of first-degree CSC and sentenced to a prison term of 18 months to five years. Both defendants appeal as of right, and their appeals have been consolidated.

Kim Lewis, the complainant, testified that on July 18, 1981, at about 3 a.m. two men in a car pulled up and asked her if she needed a ride while she was walking to catch a bus. After she refused

the offer, the driver, Detreich Burris, grabbed and forced her into the car in which Jackson was a passenger. Lewis testified that the men drove her to an apartment and that Burris took her by the arm from the car into the apartment. She tried to escape but was forced by Burris to undress and submit to sexual acts with him and Jackson. Burris took her clothes and locked them in a room.

Lewis testified that after this she tried to escape out a window but, once on the roof, found that the only exit was through another open window. Clothed only in a housecoat, she entered the window and woke defendant Henderson, who was sleeping in the room, and asked him for help. He told Burris and Jackson, who were knocking and pushing on his door, that Lewis was not in his room. Burris pushed his way into the room and forced Lewis back to his room. She was forced to submit to further sexual acts with all three men and then to take a bath. Burris left the apartment to go to the store and to make a telephone call. He took the key to the room in which Lewis's clothes were locked. Lewis, again, clothed only in a housecoat, managed to climb out a window which overlooked the main street and onto a sign which hung next to the window and yell for help until a passing Detroit police patrol car stopped. After talking with defendants, who had remained in the apartment, and Lewis, the officers placed defendants under arrest. Burris was not at the apartment when the police arrived and has apparently fled the jurisdiction.

During the direct examination of Lewis, the prosecutor referred to Burris as "the man who's not here". Neither defense counsel objected to this characterization. Prior to his closing argument and outside the presence of the jury, the prosecutor

moved for a jury instruction on flight in regard to Burris. Upon objection by counsel for Jackson, the trial judged denied the request. The trial court did, however, rule that the prosecutor could draw and argue rational inferences from the evidence. The prosecutor had already referred to the fact that Burris had never been found while summing up his opening statement.

In his closing argument, counsel for Henderson argued that there were serious flaws in the case as presented by the prosecution including the fact that Henderson had not fled when the police arrived. In his rebuttal argument, the prosecution responded to the Henderson argument and again referred to Burris's flight.

Now, on appeal, defendant Jackson argues that the multiple references to Burris's flight caused reversible error. We disagree. In this case the references to "the man who's not here" were necessary to avoid confusion and were used as an aid to help the complainant keep her testimony in order. Further, Burris's flight is so closely connected with the transaction as to be admissible as res gestae.

"It cannot be shown, as against accused on trial, that an accomplice or a co-conspirator has fled or escaped since the commission of the crime, *except when so closely connected with the transaction as to be admissible as res gestae,* * * * or where both accused and his codefendant made their escape and fled at the same time." (Emphasis added; footnotes omitted.) 22A CJS, Criminal Law, § 767(g), p 1152.

An examination of the facts and the courts' analyses in the cases cited under § 767(g) leads us to conclude that the res gestae exception to the general prohibition of the admission of evidence of

flight of a codefendant against another is rather narrow. In one case, evidence of an attempted escape by a codefendant which occurred immediately after the shooting of a police officer was held to be part of the res gestae of the crime.[1] We note, however, that both defendants had fled. In another case, the flight of the co-conspirator occurred while the conspiracy to rob was still in progress.[2] We conclude that our case fits within the exception. Although the physical attacks on Lewis with which defendants were charged had ceased, the force which is an element of these forms of CSC still existed. The evidence indicates that Lewis was still under the control of Burris and the defendants. When Burris left to make a telephone call, he took the key to the room within which Lewis's clothes were locked. Further, Lewis was able to escape defendants only by risking her safety by climbing through a window. Even if we believed the prosecutor put too much emphasis on Burris's flight, we would find no reversible error.

We also find no reversible error in defendant Jackson's second argument. Unlike the case of *People v Erb,* 48 Mich App 622; 211 NW2d 51 (1973), the prosecutor did not attempt to vouch for the complainant's veracity based on the prestige of his office. The prosecutor merely stated his belief that the complainant had no motive to fabricate, that she was entitled to be believed and that the evidence in the case supported her testimony. Neither defense counsel objected to the prosecutor's statements. Further, both defense counsel expressed their disbelief in the complainant's testimony during their closing arguments.

We also reject defendant Henderson's allega-

---

[1] *State v Martin,* 175 Kan 373; 265 P2d 297 (1953).

[2] *Fairris v State,* 287 P2d 708 (Okla Crim App, 1955).

tions of ineffective assistance of counsel. Review of
the closing argument of Henderson's attorney re-
veals that the contention that defense counsel
failed to argue permissible inferences is without
merit. Defense counsel pointed out a number of
inconsistencies in the testimony. He argued that
the testimony given by the examining doctor and
the police officers who arrived at the scene and the
findings of the evidence technicians did not corrob-
orate the testimony given by Lewis. Henderson's
counsel also argued from logical inferences that
the complainant was a voluntary participant with
Burris in any of the activities which may have
occurred.

Henderson also contends that his counsel's fail-
ure to move for a new trial on the ground that the
verdict was against the great weight of the evi-
dence denied him effective assistance of counsel.
"An objection going to the *weight* of the evidence
can be raised only by a motion for a new trial."
(Emphasis in original.) *People v Mattison,* 26 Mich
App 453, 459; 182 NW2d 604 (1970). Under the
test set forth in *People v Garcia,* 398 Mich 250;
247 NW2d 547 (1976), a mistake made by defense
counsel must be of such magnitude that, but for
the mistake, the defendant might not have been
convicted. Because a motion for new trial on the
ground that the verdict is against the great weight
of the evidence must be made after the verdict is
rendered, it cannot be held that but for defense
counsel's failure to so move defendant might not
have been convicted.

Affirmed.

BRONSON, J., concurs in the result only.

R. M. MAHER, P.J. *(dissenting).* This case raises a

question of first impression in Michigan: whether evidence of an accomplice's flight is admissible against the defendant.

As the people admit, such evidence is generally inadmissible. Some jurisdictions, however, recognize an exception where the flight is "so closely connected with the transaction as to be admissible as res gestae". 22A CJS, Criminal Law, § 767(g), p 1152.

Michigan has dealt with the analogous area of the admission of evidence of acts and declarations of one co-conspirator against another. The rule is codified in MRE 801(d)(2)(E):

"(d) Statements which are not hearsay. A statement is not hearsay if—* * *

"(2) Admission by party-opponent. The statement is offered against a party and is * * * (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy."

Evidence of the flight of defendants' alleged accomplice, Detreich Burris, is not admissible. It is not admissible under MRE 801(d)(2)(E) because it is not a "statement" as defined in MRE 801(a). Burris's flight was not "nonverbal conduct * * * intended by him as an assertion".

The evidence is similarly inadmissible under the res gestae exception. It is at this point that I and Judge CYNAR part company. Judge CYNAR finds that the flight was part of the res gestae because when Burris left to make a phone call the complainant was still forcibly restrained. Burris, however, did not "flee" when he departed for a nearby phone booth. Judge CYNAR has misidentified his

act of flight. He fled, if at all,[1] when he observed the police at the apartment building upon his return to the area. But by that time, the complainant had been liberated; the crime was over. Thus, Burris's flight was simply not part of the res gestae.

In his rebuttal argument, the prosecutor argued in part:

"Is there any way to change the fact that Mr. Burris cannot be found, that he has just left? Use your reason and common sense on that one, ladies and gentlemen. Mr. Burris is coming back and he sees police cars perhaps, and then he's nowhere to be found. Isn't that at least an indication of something going on, something that's not entirely innocent?"

The prosecutor improperly used evidence of Burris's flight to impute guilt to defendants. The resulting prejudice could not have been cured by a timely requested instruction. I would reverse the convictions of both defendants.

---

[1] I note that there was no direct evidence of Burris's flight. His flight can only be inferred from his failure to return to the apartment.