STATE of Wisconsin, Plaintiff-Respondent,

v.

Harvey Lee WINSTON, Defendant-Appellant.†

Court of Appeals

No. 84–527–CR. Submitted on briefs July 10, 1984.—
Decided August 22, 1984.
(Also reported in 355 N.W.2d 553.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Barry M. Levenson,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Moser, J. and Michael T. Sullivan, Reserve Judge.

SULLIVAN, J.    Harvey Lee Winston (Winston) appeals from a judgment of conviction of third degree sexual assault (party-to-a-crime). He asserts the trial court prejudicially erred in admitting evidence of the flight of his alleged co-actor and by submitting the flight instruction to the jury without limitation. We hold that there was no error in the ruling of the trial court or in its charge to the jury. Accordingly, we affirm.

The state's key witness was the sexual assault victim, 22 years of age at the time of the assault. She testified that on March 19, 1983, at about 10:00 p.m., after leaving the downtown Milwaukee restaurant where she worked as a hostess, she noticed two men walking toward her on the street. The men, Winston and his co-defendant, John Outlaw (Outlaw), accosted her. The pushed her against the wall of the Clark Building and demanded money. When she displayed an empty purse, one of the men struck her in the mouth. She noticed that Outlaw had a knife. Outlaw said that he wanted sex. The men pushed the victim, from behind, up a parking ramp to the roof of the Clark Building. On the way up, the victim pulled $9 from her jeans pocket and gave it to one of her assailants in the hope they would let her go. (Later that evening, the police found a five dollar bill and four singles on Winston's person.) One of the men struck the victim in her left temple. When they reached the roof, Winston directed the victim to remove her clothing and lie on her coat. She lowered her jeans and underwear and unwillingly submitted to Winston's insertion of his

penis into her vagina. She heard Outlaw tell Winston to hurry so that "he could have his turn." At this point, two police officers arrived in a squad car.

Police officer Paul Lenz (Lenz) testified that when he and officer Edwin Johnson arrived, Outlaw started to run. Lenz chased him to the fifth level of the parking ramp. Outlaw straddled the parapet and either jumped or fell to the sidewalk below.

In a consolidated trial of both defendants, Winston's theory of defense was that the victim had agreed to have sex with him for money and that his intercourse with her was an act of prostitution and not a sexual assault. Winston denied striking the victim or threatening her with a knife. The jury was instructed, as to both defendants, on first, second and third degree sexual assault with respect to count one, and armed robbery, unarmed robbery and theft from the person as to count two. The jury was also given the party-to-a-crime and not guilty instructions. The court further instructed the jury that Winston's theory of defense was that the victim had solicited him for prostitution. Finally, the jury was given the standard flight charge, Wis J I—Criminal No. 172. Although only Outlaw had fled the scene, the court did not give a limiting instruction.

The jury found Winston guilty of third degree sexual assault and not guilty of armed or unarmed robbery or theft. Outlaw was found guilty of unarmed robbery and not guilty of sexual assault.

## WAIVER

Although waiver was not briefed, a reading of the record fails to reveal that Winston unequivocally objected to evidence, in the form of testimony by the victim and both police officers, of Outlaw's flight. Winston's coun-

sel, prior to trial, sought to exclude evidence of Outlaw's jump and to avoid a flight instruction. However, no objection was entered when, on direct examination, the victim referred to Outlaw's flight. Indeed, on cross-examination of the victim, Winston's counsel elicited the very same evidence. Furthermore, without any meaningful objection by Winston's counsel, both police officers testified on the matter of Outlaw's flight. This court believes that, under sec. 901.03(1)(a), Stats.,[1] Winston may have waived his objection. The state does not raise the issue, however, so we will accord Winston the benefit of any doubt.

## CO-DEFENDANT'S FLIGHT

Winston argues that evidence of Outlaw's flight was irrelevant as to Winston and that its admission constituted harmful error. This court is convinced that the evidence was so closely connected with the commission of the crime as to be admissible as *res gestae*.[2] We further hold that, even if it was error not to give an instruction limiting the evidence to use against Outlaw, its use against Winston was harmless.

---

[1] Sec. 901.03(1)(a), Stats., reads in pertinent part as follows:

901.03 Rulings on evidence. (1) EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

(a) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . .

[2] Both parties use the term, *"res gestae,"* in their appellate briefs. We are aware that the use of the term has been abandoned in connection with the hearsay rule. *See Christensen v. Economy Fire & Casualty Co.,* 77 Wis. 2d 50, 56, n. 4, 252 N.W.2d 81, 84–85, n. 4 (1977). We use the term, *"res gestae,"* in this opinion in connection with circumstantial evidence that is not hearsay.

A trial court's decision on the admissibility of evidence is a matter within its sound discretion. *See State v. Baldwin,* 101 Wis. 2d 441, 455, 304 N.W.2d 742, 750 (1981). On review of such a decision, we examine whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *Id.*

Analytically, flight is an admission by conduct. *United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir. 1977), *cert. denied,* 439 U.S. 847 (1978). The fact of an accused's flight or related conduct is generally admissible against the accused as circumstantial evidence of consciousness of guilt and thus of guilt itself. *Id. See also Berry v. State,* 90 Wis. 2d 316, 331, 280 N.W.2d 204, 211 (1979), *cert. denied,* 444 U.S. 1020 (1980); Wis J I—Criminal No. 172.

However, evidence that the accused's accomplice or co-conspirator escaped after the commission of the crime is, as a general rule, not admissible against the accused. *See* 22A C.J.S. *Criminal Law* § 767(g) (1961). Some jurisdictions recognize exceptions to the general rule. One exception is that evidence of the flight of one co-conspirator may be used in the trial of another to prove the conspiracy. *See United States v. Borders,* 693 F.2d 1318 (11th Cir. 1982), *cert. denied,* 103 S. Ct. 1875 (1983).

Another exception is that evidence of a co-actor's flight is admissible against the defendant when the flight is so closely connected with the transaction as to constitute *res gestae.* 22A C.J.S. *Criminal Law* § 767(g), *supra.* This exception was recently recognized by the Michigan Court of Appeals in *People v. Jackson,* 335 N.W.2d 673 (Mich. Ct. App. 1983). *Jackson,* like the instant case in-

volved a sexual assault. Two men were tried and convicted. A third had fled before the police arrived; he was never found. At the trial of the other two, the prosecutor referred to the defendants' alleged accomplice as "the man who's not here." *Id.* at 675. On appeal of their convictions, the defendants argued that the prosecutor's multiple references to the flight of the alleged co-actor constituted reversible error. The appeals court held that the co-actor's flight was so closely connected with the transaction as to be admissible as *res gestae. Id.*

This doctrine was also followed in *Svirbely v. State,* 301 So. 2d 219 (Ala. Crim. App. 1974), wherein both the defendant and his co-conspirator fled the scene of a felonious assault with a deadly weapon on a law enforcement officer engaged in the performance of his duties. On appeal from the defendant's conviction, the Alabama criminal appeals court held that evidence of the flight of the defendant and his co-conspirator was properly admitted into evidence as part of the *res gestae* of the attempted robbery and shooting of the police officer. The court reasoned that "[t]heir flight . . . was an important part of the total picture of the crime charged." *Id.* at 222.

One is hard pressed to imagine a flight more closely connected with the transaction than the one presented here. Outlaw, observing his cohort in the act of sexually assaulting the victim, expressed his impatience at having to wait his "turn." Suddenly and unexpectedly, the assailants were confronted by police. Winston, literally caught in the act, was still on top of the victim. Outlaw was in a position to run and did so. He fled to the edge of the fifth floor of the parking structure and then leaped or fell off. Outlaw's flight took place while Winston's sexual assault upon the victim was still in progress. The flight was also an incident to that crime, prompted, as it

was, by the arrival of the police. Clearly, Outlaw's flight was part of the *res gestae*. Therefore, the trial court did not abuse its discretion in allowing the flight evidence to be used against Winston.

Furthermore, we are convinced that even if, *arguendo*, an abuse of discretion occurred, the use of the evidence was harmless error. The test for harmless error of non-constitutional dimensions is whether the appellate court can conclude that there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. *Novitzke v. State,* 92 Wis. 2d 302, 308, 284 N.W.2d 904, 907–08 (1979). The evidence of flight was not crucial to the jury's determination. Independent evidence established Winston's guilt beyond a reasonable doubt. In addition to the victim's own testimony that she did not consent to Winston's sexual intercourse with her, there was also the testimony of Diane Phillips who witnessed the initial accosting of the victim by the defendants and who reported it to the police, along with her observation that the victim appeared scared by the men's actions.

In conclusion, because the evidence of Winston's co-actor's flight was part of the *res gestae* and thus properly admitted, the judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.