STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Meril L. GRINDER, Defendant-Appellant.

Supreme Court

*No. 93–0479–CR. Oral argument December 1, 1994.—Decided February 24, 1995.*

(Also reported in 527 N.W.2d 326.)

543

For the plaintiff-respondent-petitioner the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief by *F.M. Van Hecke, Todd E. Verbick* and *Van Hecke & Mank, S.C.,* Milwaukee and oral argument by *Todd E. Verbick.*

JANINE P. GESKE, J. This case is before the court on a petition by the State of Wisconsin for review of an unpublished decision of the court of appeals, dated January 26, 1994, which reversed two judgments of conviction entered against the defendant, Meril L. Grinder (Grinder), by the circuit court for Walworth County, Robert J. Kennedy, Circuit Judge. The court of appeals ruled that Grinder, while on trial for a number of charges, including aggravated battery and bail jumping, was: (a) denied the right to a fair trial because the circuit court required him to wear leg shackles without independently determining that such restraints were necessary; and (b) prejudiced in front of the jury when the judge referred to him as "the prisoner."

The primary issue before this court is whether the court of appeals erred as a matter of law when it found that Grinder had been denied his right to a fair trial because of the use of leg shackles, without a concomitant finding that the jury was in fact able to view the leg shackles. Two additional issues under consideration are whether Grinder was prejudiced (a) when the circuit court referred to him as "the prisoner" in front of

544

the jury and (b) when the circuit court failed to read to the jury the "not guilty" option for the bail jumping charge.

We conclude that the circuit court erred when it ordered Grinder to be shackled, referred to him as "the prisoner," and failed to read the not guilty option for the bail jumping charge. However, we reverse the decision of the court of appeals because we find those errors to be harmless.

First, though the circuit court erroneously exercised its discretion when it failed to consider whether this particular defendant needed to be restrained in the courtroom, there is nothing in the record to indicate that the jury ever saw Grinder shackled, either while seated at the defense table or while on the witness stand. The paper wrapping around both the prosecution and defense tables was not prejudicial to Grinder because there is no showing that a reasonable juror would have believed that Grinder was shackled behind that paper.

Second, the circuit court's reference to Grinder as "the prisoner" on the last day of the trial, though improper, did not jeopardize the conduct of a fair trial. Contrary to the conclusion of the court of appeals, this isolated incident cannot be viewed in combination with the shackles requirement as a compromise of Grinder's fundamental rights because there is no evidence to confirm that the jury ever knew of or saw the shackles, thus imperiling the presumption of innocence.

Finally, the circuit court erred when it failed to read to the jury the verdict form which provided the alternative of finding Grinder not guilty of bail jumping. However, Grinder was not prejudiced by this omission because (a) the court did instruct the jury to find the defendant not guilty of bail jumping if it was

not convinced beyond a reasonable doubt of his guilt, and (b) the court provided the jury with a complete set of the sixteen verdict forms for use in the jury room.

The facts of this case are as follows. During the evening of June 4, 1991, Grinder and an associate, Dale Gainer, were drinking at the Last Place West tavern in Walworth County. According to Grinder, when they left the bar an argument ensued because Gainer wanted to drive. After Gainer drove Grinder's truck a short distance, he stopped in the middle of a county highway and another argument began, which resulted in a physical fight outside the truck. Grinder hit Gainer in the face a number of times and continued to do so after Gainer was on the ground. Grinder then left his truck and walked home. Gainer was subsequently found on the road next to the truck, transported to a local hospital, and transferred via Flight for Life to the Milwaukee County Medical Complex with extensive head injuries.

On the evening of September 14, 1991, according to Grinder, he stopped at the Last Place West tavern on the way home from work to have a couple of beers and to get a six-pack. Another acquaintance, George Morris, asked Grinder for a ride home. When the two left the bar, Grinder stated he walked to the rear of the truck to store the six-pack. At that time, Morris allegedly hit Grinder's left hand, breaking it with a side stake. Grinder then grabbed a crowbar and hit Morris across the chest, legs, and head. While Morris was on the ground, Grinder stood over him, threatening to kill him, so that Morris would not get up and hit him again.

Grinder was thereafter charged in an amended information with five felony offenses, including two counts of aggravated battery, one count of reckless endangerment with a weapon, one count of disorderly

conduct, and one count of bail jumping.[1] At the conclusion of a September 18, 1991, court appearance,

[1] The statutory counterparts to these charges are: Section 940.19(2), Stats., which provides:

**940.19 Battery; aggravated battery. . . .**
. . .
(2) Whoever causes great bodily harm to another by an act done with intent to cause great bodily harm to that person or another with or without the consent of the person so harmed is guilty of a Class C felony.

Section 941.30(2), Stats., which provides:

**941.30 Recklessly endangering safety. . . .**
(2) *Second-degree recklessly endangering safety.* Whoever recklessly endangers another's safety is guilty of a Class E felony.

Section 939.63, Stats., describes the penalties for the use of a dangerous weapon. Section 939.63(1)(a) states:

**939.63 Penalties; use of a dangerous weapon. (1)** (a) If a person commits a crime while possessing, using or threatening to use a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased as follows:
1. The maximum term of imprisonment for a misdemeanor may be increased by not more than 6 months.
2. If the maximum term of imprisonment for a felony is more than 5 years or is a life term, the maximum term of imprisonment for the felony may be increased by not more than 5 years.
3. If the maximum term of imprisonment for a felony is more than 2 years, but not more than 5 years, the maximum term of imprisonment for the felony may be increased by not more than 4 years.
4. The maximum term of imprisonment for a felony not specified in subd. 2 or 3 may be increased by not more than 3 years.

Section 947.01, Stats., which provides:

**947.01 Disorderly conduct.** Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.

Section 946.49(1)(b), Stats., which provides:

Grinder was released on bond under ch. 969, Stats.[2] One of the conditions of his release was that he not drink alcohol. However, on October 8, 1991, Grinder was stopped while driving, for an expired registration. While questioning Grinder, the officer noted an odor of intoxicant. When asked if he had been drinking, Grinder replied that he had consumed a couple of beers. This violation of his bond resulted in the bail jumping charge in the amended information.

On the first day of trial, prior to voir dire, defense counsel objected to the requirement that Grinder wear shackles in the courtroom. Specifically, counsel stated that Grinder's right to a fair trial would be compromised because the presence of the shackles would create the belief in the minds of jurors that Grinder posed a danger, thereby violating the premise that a defendant is to be presumed innocent. The court responded that it would not interfere with jail procedures and that the shackles were not inappropriate since the charges at issue involved extreme violence. However, the court, conceding that a continuous viewing of the shackles by the jury could be problematic, gave defense counsel the option of having brown paper placed around the bottom of both counsel tables. Further, the court stated that if Grinder were to testify, needed to move about or leave the courtroom, a recess

---

**946.49 Bail jumping. (1)** Whoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond is:

 . . .

 (b) If the offense with which the person is charged is a felony, guilty of a Class D felony.

All statutory references in this opinion are to the 1991–92 Wisconsin Statutes.

[2] Chapter 969 describes bail and other conditions of release.

would be called and the jury excused so that the shackles would not be exposed.

Defense counsel responded that he wished to make an offer of proof that on several occasions following Grinder's arrest, Grinder was allowed to travel, unescorted, to Milwaukee for alcohol treatment. He participated in those sessions without either shackles or law enforcement supervision. The court, however, stated that (a) the offer of proof was untimely and should have been made prior to the start of trial; (b) no further trial time would be used to consider this evidence or to allow the state to respond to the allegations; and (c) at all times Grinder had appeared before the court, he was shackled.

In light of the issues argued before the court of appeals and this court, it should also be noted that on the third and final day of the trial, the judge stated to the jury that there was a delay in the proceedings because

> we were trying to get an organization. When you get a *prisoner* up at 8:00 o'clock in the morning, and you return him at 7:15 in the night, we have an overlapping of shifts at the Sheriff's Department. When there is an overlapping of work shifts, you get confusion. So the *prisoner* didn't get here until about five minutes ago. That is part of the reason why we are late getting started here.

(Emphasis added.) The jury ultimately convicted Grinder of two counts of lesser-included battery and one count of bail jumping.[3] In March, 1992, the court

[3] For the assault on Gainer, Grinder was convicted of intermediate battery, in violation of §§ 940.19(1m) and 939.63(1)(a)2, Stats., and bail jumping, in violation of § 946.49(1)(b), Stats. For the assault on Morris, Grinder was convicted of inter-

sentenced Grinder to a term of imprisonment of three years and to concurrent terms of probation of three years and five years, consecutive to the term of imprisonment.

Grinder appealed from the judgments of conviction. The court of appeals, reversing the judgments and remanding for a new trial, held that the circuit court erroneously exercised its discretion when it ordered Grinder to wear shackles during his trial. First, the court stated that the circuit court erred when it deferred to a sheriff's department policy without exercising its own independent discretion in order to conclude that restraints for Grinder were necessary. Second, the circuit court's reference to Grinder as "the prisoner," in combination with the shackles requirement, compromised Grinder's right to a fair trial. Finally, though the court of appeals did not reach the merits of the issue, it stated that the circuit court must ensure that all instructions agreed to are conveyed to the jury carefully and accurately.

## THE EXERCISE OF DISCRETION

A trial court maintains the discretion to decide whether a defendant should be shackled during a trial as long as the reasons justifying the restraints have been set forth in the record. *Flowers v. State,* 43 Wis. 2d 352, 363, 168 N.W.2d 843 (1969). As the court of appeals correctly stated, such a "discretionary determination must be the product of a rational mental process

---

mediate battery while using a dangerous weapon, in violation of §§ 940.19(1m) and 939.63(1)(a)2, Stats. Grinder was found not guilty of second degree recklessly endangering safety and disorderly conduct, while using a dangerous weapon. *See* §§ 941.30 (2) and 939.63(1)(a)4, Stats.

by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Consequently, a decision should not be reversed unless it can be shown that the court erroneously exercised its discretion. *See Sparkman v. State,* 27 Wis. 2d 92, 96, 133 N.W.2d 776 (1965).

We conclude, however, that the circuit court in fact erroneously exercised its discretion when it relied primarily upon sheriff's department procedures, rather than considering Grinder's particular risk of violence or escape. We also hold that the court's failure to weigh the need to restrain this particular defendant did not prejudice him because there is no evidence to indicate that the jury either was aware of or actually saw him in shackles at any point.

In *Estelle v. Williams,* 425 U.S. 501, 503 (1976), the United States Supreme Court stated that

> [t]he right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. . . . The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.

(Citation omitted.) Not only must the court be alert to those factors which may "undermine the fairness of the fact-finding process," *id.,* it must also "evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience." *Id.* at 504. Thus, when a court, in its discretion, orders a defendant placed in shackles during the course of a trial, it should be aware that the restraints may psychologically engender prejudice in the minds of jurors

551

when they view "a man presumed to be innocent in the chains . . . of the convicted." *State v. Cassel,* 48 Wis. 2d 619, 624, 180 N.W.2d 607 (1970); *see also Illinois v. Allen,* 397 U.S. 337, 344 (1970) (the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant).

Therefore, a circuit court must carefully exercise its discretion in deciding whether to shackle a defendant and then, on the record, must set forth its reasons justifying the need for restraints in that particular case. The circuit court should not order the imposition of restraints unless they are "necessary to maintain order, decorum, and safety in the courtroom . . .." *Flowers,* 43 Wis. 2d at 362.

Here, the circuit court erroneously exercised its discretion when it did not consider factors beyond the sheriff's department policy on shackling defendants as a basis for placing restraints on Grinder. Instead, the court should have evaluated defense counsel's offer of proof describing how Grinder had been released from custody on several occasions in order to travel from the Walworth County jail to Milwaukee for alcohol treatment sessions. The court should have also considered other factors, such as the nature of the charges, the background of the defendant, and possible security risks in the courtroom.

However, the circuit court's erroneous exercise of discretion did not result in a denial of a fair trial for Grinder because the court took adequate steps, in advance of any problems which might have occurred, to conceal the shackles from the view of the jury.[4] For

---

[4] In *State v. Staples,* 99 Wis. 2d 364, 374–75, 299 N.W.2d 270 (Ct. App. 1980), the court of appeals found that a policy of

example, the court said that if Grinder were to take the stand:

> I call a recess. You tell me if you are going to call your client to the stand. When it comes time, I tell the jury we are going to take a ten minute break because I've got some facts to consider. The jury steps out. We put the defendant in there, and as you can see he can step in far enough and sit without the necessity of anybody seeing those shackles. Then at that point in time [the jury] will be brought back, and they don't know anything.
>
> [DEFENSE COUNSEL]: What if there comes a point in time and [Grinder] needs to come out front and demonstrate something?
>
> THE COURT: You better tell me ahead of time, and we'll deal with it. I don't have reason to believe, but if that's part of your tactics we'll take a recess and try to work with it. . . .

There is no evidence that the jury ever saw Grinder shackled, either while seated at the defense table or when he was on the witness stand.[5]

---

shielding the presence of leg restraints from the view of the jury sufficiently offset any significant possibility of prejudice against the shackled defendant.

[5] On the third day of trial, defense counsel requested removal of the shackles so that the jury would be able to view a scar on Grinder. The court agreed and stated:

> Since I will allow the chains off and since that will mean sitting in the witness chair, if you feel the need to demonstrate his scars or show his wounds, you can do all of that. During the course of his testimony, I am going to have [Grinder] out of the chains. I have already informed the Sheriff's Department that we are going to need an extra guard up here. I see that there are two police officers present in the courtroom. Is there going to be a third policeman?
>
> THE OFFICER: Yes, Your Honor.

## THE COURT'S REFERENCE TO "THE PRISONER"

■

On the third morning of the trial, there was a delay in the proceedings. When the jury finally was seated, the judge explained that the parties had been in court until 7:15 the night before, working on jury instructions. Even though court was ready to reconvene at 8:00 a.m., "the prisoner" was not present. As the judge explained,

> When you get a prisoner up at 8:00 o'clock in the morning, and you return him at 7:15 in the night, we have an overlapping of shifts at the Sheriff's Department.

This overlap caused confusion, resulting in the late arrival of "the prisoner." Obviously, the circuit court acted improperly when it referred to Grinder as "the prisoner" in front of the jury. However, this reference did not jeopardize Grinder's right to a fair trial. Contrary to the reasoning of the court of appeals, this incident was an isolated occurrence and cannot be viewed in combination with the shackles requirement since there is no evidence that the jury saw or knew about the shackles.

Both the circuit court's erroneous exercise of discretion when deciding to use restraints on Grinder and its reference to Grinder as "the prisoner" are of serious concern and constitute errors. However, the totality of the record convinces us that these errors were harmless; that is, they did not contribute to the guilty verdict so as to warrant a new trial.[6] *See State v. Dyess,* 124 Wis. 2d 525, 547, 370 N.W.2d 222 (1985).

---

[6] Section 805.18, Stats., establishes the conditions for a new trial:

## THE JURY INSTRUCTIONS

At the conclusion of Grinder's trial, the jury was given sixteen verdict forms to use in its deliberations. The forms reflected the five criminal counts, the lesser-included offenses, and alternative verdict forms of guilty and not guilty on each of the charges. The trial transcript, however, reveals that the court actually read to the jury all but the sixteenth verdict form which stated:

> A sixteenth reading: 'We, the jury, find the defendant, Meril L. Grinder, not guilty of bail jumping, as charged in the fifth count of the information.'

Grinder argues that an oral reading to the jury of only the guilty of bail jumping verdict form was prejudicial because the omission would have caused the jurors to conclude that they were directed to find him guilty of bail jumping. We agree that the omission was

---

**805.18 Mistakes and omissions; harmless error. (1)** The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.

(2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

---

In *State v. Dyess,* 124 Wis. 2d 525, 547, 370 N.W.2d 222 (1985), this court stated that even though § 805.18 is part of the Code of Civil Procedure "and on its face applies only to civil cases, this court has applied its rule to criminal cases, because [§ ] 972.11(1) makes the rules of evidence and civil procedure applicable to those cases as well."

error; however, we disagree with Grinder's claim that it was prejudicial.

First, although the circuit court did not read the not guilty of bail jumping verdict to the jury, it did instruct the jury regarding the bail jumping verdicts. The jury was told to find Grinder not guilty of bail jumping if it was not satisfied beyond a reasonable doubt of his guilt. The court specifically instructed the jury:

> If you are satisfied beyond a reasonable doubt that the defendant was arrested for a felony, was released from custody under conditions, and intentionally failed to comply with the conditions of his release, you should find the defendant guilty.
>
> If you are not so satisfied, you must find the defendant not guilty.

Second, the jury had all sixteen written verdict forms when deliberations began. As a result, at the time the jury delivered its verdict finding Grinder guilty of bail jumping, it also had the not guilty alternative in its possession.

This court has previously held that jury instructions should not be considered separately but, instead, should be read as a whole. In *Moes v. State,* 91 Wis. 2d 756, 768, 284 N.W.2d 66 (1979), we stated:

> In evaluating instructions given to a jury, we recognize they are to be considered in their entirety; and if the error is rendered harmless because of other correct statements of law contained in the instructions, there are no grounds for reversal. Furthermore, even if the error is not rendered harmless by other portions of the instructions, there is no reversible error unless it may reasonably be

said that, had the error not been made, the verdict might probably have been different.

(Citations omitted.) Here, the jury was told to find the defendant not guilty of bail jumping if it was not satisfied beyond a reasonable doubt of his guilt. The jury was provided with the not guilty of bail jumping verdict. The failure to actually read that sixteenth verdict to the jury was harmless error.

A circuit court faces a multitude of issues and problems during the course of a jury trial. The court is often simultaneously addressing constitutional, evidentiary, and logistical problems while trying to balance the rest of the court calendar. The issues to be resolved frequently appear to be endless and without clear answers. However, it is critical that the court take the time it needs to protect the parties' rights to a fair trial and to avoid some of the problems that occurred here.

Although we find that the circuit court erred in this case, we do not find that the errors at issue prejudiced Grinder's right to a fair trial.

*By the Court.*—The decision of the court of appeals is reversed.