STATE of Wisconsin, Plaintiff-Respondent,

v.

Daryl M. KNIGHTEN, Defendant-Appellant.

Court of Appeals

*No. 96–2595. Submitted on briefs July 22, 1997.—Decided August 13, 1997.*

(Also reported in 569 N.W.2d 770.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Michael P. Reisterer, Jr.,* of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *William C. Wolford,* assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. Daryl M. Knighten appeals from a judgment of conviction for robbery by the use of force pursuant to § 943.32(1)(a), STATS.[1] On appeal, Knighten raises the following issues: (1) the trial court should have ordered a mistrial because a potential juror saw him shackled outside the courtroom before the start of his jury trial and this information was then made known to the entire jury panel during voir dire; (2) the trial court should have granted a mistrial because Knighten was shackled during the jury trial; (3) the trial court erred by admitting evidence of Knighten's escape on the morning of the jury trial; and (4) the trial court violated Knighten's right of confrontation when it restricted certain cross-examination of the victim regarding her identification of Knighten. We reject all of Knighten's arguments.[2] We affirm the judgment of conviction.

---

[1] Knighten was convicted as a habitual criminal pursuant to § 939.62, STATS.

[2] Knighten also argues that the trial court should have granted a mistrial because several of the jurors learned about his escape from certain media sources after the first day of trial.

## FACTS

We begin with the facts surrounding the crime. Except for the question of the victim's identification of Knighten, the facts relating to the crime itself are not in dispute. On October 22, 1995, at about 4:00 p.m., Merle Preslan, a seventy-seven-year-old woman, was accosted while she was walking home on Sheridan Road in Kenosha, Wisconsin. The assailant tore Preslan's purse away from her, causing her to fall onto the sidewalk.

A witness, Roger Patty, lived near the scene of the attack. His attention was first drawn to the scene when he saw a vehicle parked on the wrong side of the road. He continued to watch the vehicle and saw a man get out of the car. Later he saw the man grab Preslan's purse and saw her fall to the ground. Patty told his roommate to call the police and he ran out to help Preslan. The police arrived and Patty provided a description of the vehicle and the assailant.

A short while later, the police stopped a vehicle matching Patty's description. Knighten was the driver. Preslan's purse was found in the vehicle. The police transported Knighten to the scene of the robbery. Preslan identified Knighten as the robber. The police also towed the vehicle back to the scene of the robbery. Patty described it as the vehicle he had seen. Based on this evidence, the State charged Knighten with robbery by use of force pursuant to § 943.32(1)(a), STATS.

The jury found Knighten guilty and the trial court entered a judgment of conviction. Knighten appeals.

---

Because we hold that the court properly admitted evidence of Knighten's escape, the fact that several jurors also learned about the escape from an extra-judicial source renders the issue moot. We therefore do not address this issue.

We will recite additional facts as we discuss each appellate issue.

## DISCUSSION

### *EVIDENCE OF KNIGHTEN'S ESCAPE*

On the morning of the scheduled jury trial, Knighten was escorted in restraints from the jail to the courtroom. Upon being delivered to the courtroom, the officer in charge of Knighten's custody removed the restraints. Knighten then asked to use the bathroom. The officer was escorting Knighten to the bathroom when Knighten escaped. He was apprehended about thirty minutes later and returned to the courtroom. The trial commenced.

The State asked the trial court to admit evidence of Knighten's escape as consciousness of guilt evidence. The court took the matter under advisement, and the parties devoted the balance of the day to jury selection. Before the evidentiary phase of the trial began the following day, the trial court granted the State's request to admit the escape evidence. Knighten challenges this ruling.

Knighten notes that the United States Supreme Court has cautioned against the reliability of escape evidence to show consciousness of guilt. In support he cites *Wong Sun v. United States,* 371 U.S. 471 (1963). "[W]e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Id.* at 483 n.10. However, *Wong Sun* does not declare such evidence inadmissible. The same must be said of two additional cases upon which Knighten relies, *United States v. Jackson,* 572 F.2d 636 (7th Cir. 1978), and *United States v. Rodriguez,* 53 F.3d 1439 (7th Cir. 1995). In

fact, *Jackson* acknowledges that "[t]his court has, on numerous occasions, approved the admission of flight evidence under the general rule that flight of the accused may be admissible as evidence of consciousness of guilt and thus of guilt itself." *Jackson,* 572 F.2d at 639. To the extent that Knighten is arguing that this federal case law bars the introduction of the escape evidence in this case, we disagree.

■

We now turn to the Wisconsin law. As with all evidentiary questions, the admissibility of flight evidence is committed to the trial court's discretion. *See State v. Winston,* 120 Wis. 2d 500, 505, 355 N.W.2d 553, 556 (Ct. App. 1984). It is well established that evidence of flight and resistance to arrest has probative value as to guilt. *See Wangerin v. State,* 73 Wis. 2d 427, 437, 243 N.W.2d 448, 453 (1976). This court has stated:

> Analytically, flight is an admission by conduct. The fact of an accused's flight or related conduct is generally admissible against the accused as circumstantial evidence of consciousness of guilt and thus of guilt itself.

*Winston,* 120 Wis. 2d at 505, 355 N.W.2d at 556 (citations omitted).

■

As the trial court noted, this case does not present the usual escape situation where the suspect undertakes to avoid initial apprehension on the heels of a criminal event. Instead, the escape here occurred long after the crime. In an effort to support the admissibility of the escape evidence, the State looks to cases in which the defendant's acts, other than escape,

were properly admitted as consciousness of guilt.[3] However, the State need not have gone to those lengths. In *Gauthier v. State*, 28 Wis. 2d 412, 137 N.W.2d 101 (1965), the defendant escaped from custody while awaiting trial. The supreme court ruled that evidence of the escape was properly admitted at the trial. The court said:

> "It is to-day universally conceded that the fact of an accused's flight, escape from custody . . . and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself."

*Id.* at 420, 137 N.W.2d at 105–06 (quoted source omitted).[4]

We affirm the trial court's discretionary decision to admit evidence of Knighten's escape on the morning of the trial.

---

[3] In *State v. Bettinger*, 100 Wis. 2d 691, 698, 303 N.W.2d 585, 588–89 (1981), evidence of the defendant's subsequent bribery of the sexual assault victim was admissible and properly joined with the sexual assault charge. In *State v. Neuser*, 191 Wis. 2d 131, 144–45, 528 N.W.2d 49, 54–55 (Ct. App. 1995), evidence of the defendant's subsequent verbal threat to the victim was properly admitted.

[4] Case law from other jurisdictions addressing escape pending trial supports the holding in *Gauthier v. State*, 28 Wis. 2d 412, 137 N.W.2d 101 (1965). *See United States v. Hernandez-Miranda*, 601 F.2d 1104, 1107 (9th Cir. 1979); *People v. Gambino*, 145 N.E.2d 42 (Ill. 1957); *People v. Gary*, 356 N.E.2d 135 (Ill. App. Ct. 1976); *People v. Ligon*, 305 N.E.2d 212 (Ill. App. Ct. 1973); *People v. Curtis*, 288 N.E.2d 35 (Ill. App. Ct. 1972); *People v. Neiman*, 232 N.E.2d 805 (Ill. App. Ct. 1967); *Commonwealth v. Madeiros*, 151 N.E. 297 (Mass. 1926); *State v. DeBerry*, 248 S.E.2d 356 (N.C. Ct. App. 1978).

## SHACKLING DURING TRIAL

Based upon Knighten's escape, the State requested that Knighten be shackled during the trial. Knighten objected. The trial court rejected Knighten's objection and ordered that Knighten wear ankle shackles during the trial. Based on Knighten's escape, the court reasoned that "[Knighten] is a substantial risk to flee again if he has the opportunity."

Knighten contends that the trial court's ruling violated his due process and fair trial rights. He contends that the shackles were not necessary and that the court did not take adequate steps to conceal the shackles from the jury.

■

In *State v. Grinder*, 190 Wis. 2d 541, 527 N.W.2d 326 (1995), the supreme court held that the trial court has the discretion to determine whether a defendant should be shackled during a trial. Sufficient reasons must support the decision to shackle a defendant and the court must place the reasons on the record. *See id.* at 550, 527 N.W.2d at 329. Knighten does not dispute that the trial court was entitled to take security measures in light of his escape from custody. However, he argues that the court should have looked first to lesser measures such as posting a deputy at each exit of the courtroom. But Knighten offers no authority for this proposition. *Grinder* accepts shackling as a means of preventing escape or violence if the risk of such events is sufficiently established. *See id.* at 551, 527 N.W.2d at 330. We hold that the court did not err in exercising its discretion to shackle Knighten.

■

We also reject Knighten's further argument that the trial court did not take precautions to conceal the shackles from the jury. In making its ruling, the trial

court reconstructed on the record the physical construct of counsel table vis-a-vis the jury box. The court said, "It seems to me from my vantage point on the bench given the structure of counsel tables that Mr. Knighten's feet and legs and therefore the ankle restraints at this point are not visible to jurors coming into the courtroom." Knighten contends that this statement was not sufficient to assure that the jurors could not see the shackles from their perspective. However, Knighten never objected to the court's description of the construct of counsel table vis-a-vis the jury's ability to see the shackles. We interpret the court's description to say that the jurors could not see Knighten's shackles. Without any evidence or information to the contrary, we accept the court's assessment.[5]

Here, the trial court properly saw the need to make a record regarding the construct of counsel table and the jury's inability to see Knighten's shackles. Occasionally, events during a trial will require the making of a record beyond the spoken word. The memorializing of "inanimate" phenomenon is sometimes necessary to a complete record. We commend the trial court for its alertness in this regard.

### JURORS' KNOWLEDGE OF KNIGHTEN SHACKLED

Prior to jury selection, a potential juror observed Knighten in restraints in a hallway outside the

---

[5] In addition, the trial court stated that it would take any other necessary measures to assure that jury would not see Knighten's shackles in the event Knighten had to move about the courtroom.

courtroom.[6] During voir dire, in answer to a question by Knighten's counsel whether any juror had a problem with the concept of the presumption of innocence, this potential juror responded in the presence of the entire jury panel, "Well, I don't know. It just—it seems funny because when I seen [sic] him coming down the hall he was all shackled, his—his hands and legs."[7] Knighten's counsel then explained to the jury panel that although Knighten was in custody, he was still presumed innocent of the charge and that his custodial status was not evidence of guilt. Counsel also asked that all of the potential jurors assure him that Knighten's custodial status would not affect their verdict. When counsel inquired whether any of the potential jurors had any questions about the presumption of innocence, the potential juror who had observed Knighten shackled asked why Knighten was in custody if he were innocent until proven guilty.

At this point, the trial court stepped in and gave the following preliminary instruction:

[A]t this time I'm going to give you an instruction, ladies and gentlemen, which I would have given you once the actual jury is selected; and based upon [defense counsel's] discussion with one of the jurors I will tell you that Mr. Knighten is in the custody of the Kenosha County Sheriff's Department. I will also instruct you that his custodial status has no bearing on the issues of guilt or innocence in this

[6] The parties' briefs do not clearly establish whether this observation occurred before or after Knighten's escape. However, this uncertainty does not affect our analysis of this issue.

[7] Another potential juror indicated that she had also seen Knighten in the hallway. This juror, however, did not state that she saw Knighten shackled.

case, and you are not to consider his custodial status as evidence against him in any way.

That is the instruction and the law you will take an oath to follow as jurors; and the question is is there anyone who will not be able to follow that instruction? Okay. Thank you.

Knighten then moved for a mistrial based on the potential juror's observations and her statement about those observations in the presence of the entire jury panel. The trial court acknowledged that it was unfortunate that the statement had been made to the entire panel. Nonetheless, the court concluded that its cautionary instructions, coupled with the jurors' assurances to Knighten's counsel and to the court that Knighten's custodial status would not influence their verdict, were sufficient to defuse the issue. The court denied the mistrial motion.

The decision whether to grant a motion for a mistrial lies within the sound discretion of the trial court. *See State v. Pankow*, 144 Wis. 2d 23, 47, 422 N.W.2d 913, 921 (Ct. App. 1988). We will reverse a denial of a mistrial motion only upon a clear showing that the trial court erred in the exercise of its discretion. *See id.*

■

We first observe that a juror's observation of a restrained defendant outside a courtroom is not likely to arouse a juror's prejudice because people expect to see prisoners in restraint when they are in a position where they could escape. *See State v. Clifton*, 150 Wis. 2d 673, 683, 443 N.W.2d 26, 30 (Ct. App. 1989). "Courts have generally found brief and inadvertent confrontations between a shackled accused and one or more members of the jury insufficient to show prejudice." *Harrell v. Israel*, 672 F.2d 632, 637 (7th Cir.

1982). Therefore, to the extent that Knighten's mistrial motion was based on the potential juror's observation of him while shackled outside the courtroom, the trial court did not err in denying the motion.

We also agree with the trial court that its cautionary instructions, coupled with the potential jurors' responses that they would not allow their knowledge of Knighten's custodial status to interfere with their verdict, warranted denial of the mistrial motion on the added ground that the juror's observations had been revealed to the entire jury panel. We assume a jury follows all of the instructions that it receives. *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432, 436 (Ct. App. 1989).

We also note that any prejudicial effect of the jurors' knowledge that Knighten was shackled while in the hallway was substantially lessened by the jury properly learning at trial that Knighten had escaped from custody the morning before. This testimony established not only that Knighten had escaped but also that he had been in restraints as he was being transported to the courtroom from the jail. Thus, the jury ultimately learned from a proper source that Knighten was in custody and shackled despite the potential juror's spontaneous revelation of this information during voir dire. On this added ground, we affirm the trial court's denial of Knighten's mistrial motion.

## LIMITS ON CROSS-EXAMINATION OF THE VICTIM

Preslan emphasized her assailant's eyes when giving her description and identifying Knighten. Based

on this testimony, Knighten sought to conduct an experiment on cross-examination by displaying to Preslan an array of sixteen booking photos of men, including Knighten. The photos were covered so that only the eyes and the top of the nose of each man was visible. Knighten sought to determine if Preslan could identify Knighten's photo from this array. The State objected to this line of cross-examination and the trial court sustained the objection. Knighten appeals this ruling, contending that the court violated his right of confrontation.[8]

In support of its ruling, the trial court noted that Preslan's assailant was not masked and that Preslan's description of her assailant and her identification of Knighten were not made under the circumstances propounded by Knighten's cross-examination. We agree. Preslan initially identified Knighten not from a photograph but rather based on a "one-on-one" showup very soon after the robbery. Moreover, Preslan's description and identification of Knighten were not based solely on her description of his eyes. She also provided the police with a description of his clothing

[8] The State first argues that Knighten has waived this issue because he did not contend in the trial court that the court's ruling violated his confrontation right. While that is technically correct, we observe that this issue was inspired by the State's objection to Knighten's proposed cross-examination. We think it too strict an application of waiver to hold that Knighten has failed to preserve this issue by failing to expressly articulate a confrontation ground as the basis for his cross-examination. The fact remains that Knighten was cross-examining the victim about her identification—a crucial aspect of her testimony. The State's successful objection shut down that process. Under these facts, we conclude that a confrontation issue was at least implicitly at stake.

and race. Knighten was wearing similar clothing when he was initially displayed to Preslan, and his race matched Preslan's description.

We see no error by the trial court in its decision to bar Knighten from conducting this experiment with Preslan. An experiment may be admitted into evidence if its probative value is not substantially outweighed by prejudice, confusion and waste of time. *See Maskrey v. Volkswagenwerk Aktiengesellschaft,* 125 Wis. 2d 145, 165, 370 N.W.2d 815, 825 (Ct. App. 1985). The experiment must replicate the issues in the case. *See id.* Here, Knighten's proposed experiment did not satisfy this test. We acknowledge that the right of confrontation is not always limited by the rule of evidence. *See State v. Pulizzano,* 155 Wis. 2d 633, 647–48, 456 N.W.2d 325, 331 (1990). However, the right to confrontation does not extend to irrelevant or immaterial evidence. *See Rogers v. State,* 93 Wis. 2d 682, 693, 287 N.W.2d 774, 778 (1980). The crux of the right to confrontation is the opportunity for meaningful cross-examination. *See State v. Jenkins,* 168 Wis. 2d 175, 198, 483 N.W.2d 262, 271 (Ct. App. 1992). Here, Knighten's cross-examination of the victim was thorough, complete and detailed. Knighten's confrontation rights were fully protected.

## CONCLUSION

We hold that the trial court properly admitted evidence of Knighten's escape. We hold that the trial court did not misuse its discretion in ordering Knighten shackled during the trial. We hold that the trial court did not misuse its discretion in denying Knighten's motion for a mistrial based on the jury's knowledge of his custodial status. Finally, we hold that

the trial court did not abridge Knighten's confrontation rights by restricting cross-examination of the victim.

*By the Court.*—Judgment affirmed.