STATE of Wisconsin, Plaintiff-Respondent,

v.

Earl L. MILLER, Defendant-Appellant.†

Court of Appeals

*No. 98–2089–CR. Submitted on briefs July 30, 1999.—Decided November 17, 1999.*

(Also reported in 605 N.W.2d 567.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eduardo M. Borda* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sandra L. Tarver*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J.   Earl L. Miller appeals from his conviction for conspiracy to commit armed robbery with the threat of force contrary to §§ 939.31 and 943.32(2), STATS., kidnapping contrary to

451

§ 940.31(1)(a), STATS., and operating a vehicle without the owner's consent resulting in the death of another contrary to § 943.23(1r), STATS. Miller raises the following issues on appeal: (1) whether sufficient evidence was presented to show that his taking of the vehicle from the victim, Juan Bueno, was a substantial factor in causing Bueno's death; (2) whether the trial court erred in allowing evidence of Miller's flight from police after the court agreed that fleeing and eluding charges constituted a separate incident; (3) whether the court erred in refusing to instruct the jury regarding the testimony of a witness who was granted immunity; and (4) whether the court erred in admitting hearsay evidence indicating that Miller had shot Bueno.

¶ 2.   First, we conclude that because the taking of Bueno's vehicle played a prominent role in, and set into motion events leading to, Bueno's death, there was sufficient evidence to establish that Miller's theft of the vehicle was a substantial factor in causing Bueno's death. Next, we are persuaded that the trial court properly ruled admissible evidence of Miller's flight from the police. As to the immunized witness jury instruction, case law shows that a cautionary instruction is inappropriate in the present case because the immunized witness testified on behalf of Miller, not the State. Finally, we conclude that the trial court properly admitted evidence of Miller's involvement under the prior consistent statement exception to the hearsay rule. We therefore affirm the judgments.

## BACKGROUND

¶ 3.   On February 25, 1997, Miller, Mecquon Goodwin and Jamal Cronin devised a plan to steal cocaine from Bueno during a purported drug transaction which was to occur the following day. On February

26, Bueno arrived at Goodwin's residence but did not have any drugs. As a result, Miller and Goodwin seized Bueno and drove off with him in his vehicle in order to obtain drugs from his residence. While Goodwin drove, Bueno sat in the front passenger seat and Miller sat behind him with a firearm. Some time later, Bueno attempted to escape from the vehicle and Miller shot him in the back. Bueno later died.

¶ 4. On March 1, 1997, in a separate incident, a city of Racine police officer observed a vehicle being driven without proper registration. While following the vehicle, the officer activated his lights and the car sped up and swerved into oncoming traffic to evade the officer. When the vehicle was forced to stop, the driver fled and the police apprehended him. The officers discovered the driver to be Miller.

¶ 5. The State initially charged Miller with the following counts relating to both the February 26 and March 1 incidents: first-degree intentional homicide, party to the crime of armed robbery with the threat of force, party to the crime of kidnapping, party to the crime of operating a vehicle without the owner's consent resulting in the death of another, fleeing and eluding an officer and first-degree recklessly endangering safety. On May 9, 1997, Miller moved the trial court to sever the fleeing and eluding and the first-degree recklessly endangering safety charges from the kidnapping and murder charges. The State agreed with Miller and the court ordered the charges severed. The State then amended the information to include charges of conspiracy to commit armed robbery with the threat of force, party to the crime of kidnapping and party to the crime of operating a vehicle without the owner's consent resulting in the death of another.

¶ 6. On June 24, 1997, a jury trial was commenced. Miller was subsequently found guilty of the charges set forth in the amended information. He now appeals. We will discuss additional facts as needed.

## DISCUSSION

### A. Substantial Factor Test

¶ 7. Miller contends that there was insufficient evidence to establish beyond a reasonable doubt that his taking of Bueno's vehicle was a "substantial factor" in causing Bueno's death pursuant to the charge of operating a vehicle without the owner's consent resulting in the death of another. We disagree with Miller because sufficient evidence was presented.

¶ 8. When a defendant challenges the sufficiency of the evidence supporting his or her conviction, this court may not reverse the conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990). If there is any possibility that the fact finder could have reached the appropriate inferences from the evidence adduced at trial to find the requisite guilt, we may not overturn the verdict even if we are persuaded that the fact finder should not have found guilt based on the evidence presented. *See id.* at 507, 451 N.W.2d at 758.

¶ 9. Section 943.23, STATS., prohibits operating the vehicle of another without that person's consent. Miller was charged under subsecs. (1g) and (1r) of § 943.23. Subsection (1g) reads as follows:

> Whoever, while possessing a dangerous weapon and by the use of, or the threat of the use of, force or the weapon against another, intentionally takes any vehicle without the consent of the owner is guilty of a Class B felony.

Under subsec. (1r), the penalty for violating subsec. (1g) is increased to a Class A felony if the person causes the death of another.

¶ 10. At trial, the jury was instructed in the following manner as to the penalty enhancer in subsec. (1r):

> If you find the defendant guilty of aiding and abetting the taking of a vehicle by threat of force while armed with a dangerous weapon, you must answer the following question. Did the defendant cause the death of Juan Bueno? Before you may answer this question yes, you must be [certain] beyond a reasonable doubt *that the defendant's taking of the vehicle was a substantial factor in causing the death of Juan Bueno* . . . . [Emphasis added.]

This instruction is consistent with the suggested jury instruction for § 943.23(1r), STATS., found at WIS J I— CRIMINAL 1465, cmt. 6.

¶ 11. Two recent cases shape Wisconsin's jurisprudence regarding the definition of a "substantial factor" in the context of homicide. In *State v. Oimen*, 184 Wis. 2d 423, 516 N.W.2d 399 (1994), our supreme court was asked to consider whether a defendant could be convicted of felony murder if one of his coactors was killed by the intended victim during an attempted robbery. In its discussion, the court ruled that the defendant was a substantial factor in the death of the coactor because he was the ringleader responsible for planning the details of the robbery. The court was not persuaded by the fact that the "immediate" cause of the

coactor's death was the intended victim and that the defendant was not present when his coactor was shot and killed. *See id.* at 436, 516 N.W.2d at 404–05. In addressing causation, the court noted that a " 'substantial factor' need not be the sole cause of death." *Id.*

¶ 12.   In *State v. Owen*, 202 Wis. 2d 620, 551 N.W.2d 50 (Ct. App. 1996), the defendant was charged with recklessly causing great bodily harm to a child contrary to § 948.03(3)(a), STATS., when the defendant slapped the chest of a three-month-old child and the child later died. *See Owen*, 202 Wis. 2d at 627, 551 N.W.2d at 53. Upon review, we recognized that "[t]o establish causation, the State must prove beyond a reasonable doubt that [the defendant's] acts were a substantial factor in producing great bodily harm to [the child]." *Id.* at 631, 551 N.W.2d at 55. A "substantial factor," we determined, "need not be the sole or primary factor causing the great bodily harm." *Id.* We concluded that there was sufficient evidence to establish that the defendant's act of slapping the victim was a substantial factor in producing great bodily harm to the victim.

¶ 13.   Miller contends that because a "substantial factor" means a primary or main reason, the *Owen* court's additional language that a substantial factor need not be a "primary factor" should be overruled. Miller suggests that the language in *Owen* would permit "completely attenuated events to satisfy the requirements of the causation element." We disagree.

¶ 14.   We first consider the specific language used in *Oimen* and *Owen*. The *Oimen* court stated that a substantial factor need not be "the sole cause," and the *Owen* court added that a substantial factor need not be "the sole or primary factor." The holding in *Owen* is not inconsistent with *Oimen*; *Owen* merely adds the word

"primary" to its discussion of a substantial factor. Both cases use a definite article in explaining that a substantial factor need not be limited to one sole or primary cause. In *Oimen*, the primary or, as the court put it, "immediate" cause of the coactor's death was gunfire from the intended victim. However, because the defendant played a significant role in directing the robbery and "set into motion the events that [led] to [the coactor's] death," he was nonetheless considered a substantial factor. *Oimen*, 184 Wis. 2d at 437, 516 N.W.2d at 405. Our reading of *Oimen* and *Owen* convinces us that a substantial factor contemplates not only the immediate or primary cause, but other significant factors that lead to the ultimate result.

¶ 15. Here, there was sufficient evidence to establish that Miller's taking of Bueno's vehicle was a substantial factor in causing Bueno's death. After the original plan to rob Bueno of his drugs went awry, an alternative plan was conceived. Miller and Goodwin took Bueno's car in order to drive themselves and Bueno to Bueno's house to obtain the drugs. While in Bueno's car, Miller shot Bueno when he attempted to jump out of the car. He died from the gunshot wound. Based on this evidence, a reasonable jury could infer that were it not for Miller's taking of the car, Bueno would never have been shot because he would not have been trying to escape from the vehicle. Under these circumstances, the theft of the car was a substantial factor in causing Bueno's death because the taking of the car set into motion the events that led to his death. *See id.*

¶ 16. Miller contends that the focus of his and his coactors' actions was never on the vehicle but on obtaining drugs. The vehicle, however, was an integral

457

instrument in the commission of Bueno's kidnapping. Miller and Goodwin intended to use the vehicle to obtain drugs from Bueno's home. When Bueno attempted to escape from the car, he was shot. Thus, the vehicle and its taking played a prominent role in Bueno's death. We are convinced that there was sufficient evidence for a reasonable jury to conclude that the taking of Bueno's vehicle was a substantial factor in causing his death.

¶ 17.    Miller is wrong in suggesting that our holding in *Owen* allows "completely attenuated events" to satisfy causation. To say that a substantial factor "need not be the sole or primary factor" is not to say that any peripheral incident will suffice. Indeed, the language in *Owen*, as in *Oimen*, was not intended to set forth an exhaustive definition of a "substantial factor." Rather, it was meant to clarify the threshold for a substantial factor. In *State v. Serebin*, 119 Wis. 2d 837, 350 N.W.2d 65 (1984), the court did define a substantial factor, explaining that it is "a factor actually operating and which ha[s] substantial effect in producing the death as a natural result," *id.* at 848–49, 350 N.W.2d at 71 (quoting WIS J I—CRIMINAL 1160 (1962), entitled "HOMICIDE BY RECKLESS CONDUCT"), and that it refers to "the proximate, primary, efficient, or legal cause of such harmful result," *id.* at 849, 350 N.W.2d at 71 (quoting 1 WHARTON'S CRIMINAL LAW § 26, at 122–26 (14th ed. 1978)). We are not persuaded that the "substantial factor" standard, as presently set forth,

permits completely attenuated events.[1] We therefore reject Miller's request to overrule *Owen*.[2]

## B. Evidence of Fleeing and Eluding

¶ 18.   Miller argues that the trial court erred in permitting the State to introduce evidence of his flight from officers and in allowing a jury instruction on flight after the court had agreed to sever the flight charges from the kidnapping and murder charges. We are satisfied that the trial court properly found the flight evidence to be admissible.

¶ 19.   At Miller's May 9, 1997 hearing addressing his motion to sever the flight charges, the State concurred with Miller that "the fleeing and eluding is a totally separate factual incident" and promised that the charges would be "tried separately should they both go to trial." The court granted Miller's motion, agreeing that the flight was "a different factual basis and incident" from the charges relating to the murder.

---

[1] Miller also contends that *State v. Owen*, 202 Wis. 2d 620, 551 N.W.2d 50 (Ct. App. 1996), permits "secondary events" to satisfy the causation requirement. To the extent that "secondary" means not the primary or immediate cause, we agree. Because "the sole or primary factor" refers to only one factor, there may be other "secondary" factors that also rise to the level of a substantial factor. Contrary to Miller's suggestion, not all "secondary" factors are "completely attenuated" or "unimportant" events.

[2] Miller is misguided in requesting that we overrule a previously published decision of this court. The court of appeals is bound by its previous decisions and may not overrule, modify or withdraw language from its prior published decisions. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 255–56 (1997).

¶ 20.  At trial, the court permitted the State to introduce evidence of flight despite the fact that the charges had been severed. The court weighed the relevancy of the evidence under § 904.01, STATS., against the danger of unfair prejudice under § 904.03, STATS. The court concluded that "while [Miller's flight] might be removed by days, it's clearly related, it's clearly relevant evidence in my mind, and I don't find that there's any danger of unfair prejudice based upon the facts available to the defense in response to it."

¶ 21.  It is well established that evidence of flight and resistance to arrest has probative value as to guilt. *See State v. Knighten*, 212 Wis. 2d 833, 839, 569 N.W.2d 770, 772 (Ct. App. 1997). "Analytically, flight is an admission by conduct. The fact of an accused's flight or related conduct is generally admissible against the accused as circumstantial evidence of consciousness of guilt and thus of guilt itself." *State v. Winston*, 120 Wis. 2d 500, 505, 355 N.W.2d 553, 556 (Ct. App. 1984) (citation omitted). To be admissible, the defendant's flight need not occur immediately following commission of the crime. *See Gauthier v. State*, 28 Wis. 2d 412, 419–20, 137 N.W.2d 101, 105–06 (1965) (defendant escaped from custody while awaiting trial). Evidence of flight is inadmissible where there is "an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant." *Liggins v. State*, 726 So. 2d 180, 183 (Miss. 1998).

¶ 22.  Here, Miller's flight from the police occurred three days after Bueno's death. While not part of the original criminal episode, evidence of flight was admissible because it indicated Miller's consciousness

of guilt. In ruling on Miller's motion to preclude the flight evidence, the trial court noted that Miller would have the opportunity at trial to present evidence rebutting the State's evidence wherein Miller could show that "[his] state of mind was that he was running because he was aware of a warrant being outstanding for his arrest [for a crime unrelated to Bueno's homicide]." Such rebuttal evidence would not have represented an independent reason for flight that could not be explained to the jury due to its prejudicial effect. *See id.* We are convinced that the court properly exercised its discretion.

¶ 23. Miller complains that the State waived its claim at trial that evidence of his flight should be admitted because the State had conceded at Miller's motion hearing that the fleeing was a "totally separate incident." Miller, however, confuses the issue of severance with the issue of admissibility of evidence. Severance is addressed by § 971.12(3), STATS., which provides that

> [i]f it appears that a defendant or the state is prejudiced by a joinder of crimes or of defendants in a complaint, information or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

At Miller's motion hearing, the State did not concede prejudice as to flight evidence and the court did not address the issue. Instead, the State simply agreed to pursue the fleeing and eluding charges at a separate trial. While § 971.12(3) indicates that prejudice is a ground for severing charges, it does not state that evi-

dence of the severed charges is necessarily unfairly prejudicial and thus must be precluded under § 904.03, STATS. That determination is left to the discretion of the court. We therefore reject Miller's waiver argument.

■

¶ 24.   Miller further asserts that evidence of flight should not have been admitted because it was improper "other acts" evidence. Miller cites to *State v. Locke*, 177 Wis. 2d 590, 502 N.W.2d 891 (Ct. App. 1993), which involved a defendant who sought severance of sexual assault charges stemming from a 1989 incident and a separate 1991 incident. The court stated that the test for determining whether a court has failed to order severance involves an analysis of other acts evidence. *See id.* at 597, 502 N.W.2d at 894. As indicated above, however, the issue here is not whether Miller's flight charges should have been severed, but whether evidence of his flight was admissible. The two-step "other acts" analysis in *Locke*, therefore, is not applicable because Miller's motion to sever was granted.

### C.   Immunized Witness Jury Instruction

¶ 25.   Miller argues that the trial court erred in refusing to instruct the jury that one of his witnesses, Jason Mirkovich, had been granted immunity from prosecution. We conclude that the court did not err in refusing to instruct the jury because Mirkovich was not given immunity in return for testifying and because he testified on behalf of Miller, not the State.

¶ 26. · At trial, Miller called Mirkovich as his first witness. Mirkovich stated that he was with Goodwin and Cronin when they devised the plan to rob Bueno, that Cronin was the primary instigator in setting up Bueno and that he, Mirkovich, did not know Miller.

Mirkovich indicated that he went to the police the day after Bueno's murder whereupon he was granted immunity from prosecution if he would tell the police what he knew about Bueno's death. Mirkovich explained the immunity agreement as follows:

> Q. And at the time you spoke with Investigator Wanggaard were you advised anything about what you would tell them and what you might be prosecuted for by either your attorney or Investigator Wanggaard?
>
> A. Yes.
>
> Q. What were you told?
>
> A. We were told basically that we could get immunity, well, basically we told them everything we knew. We told them the truth, and then we would have immunity, you know, before we told them everything we knew, we had immunity on us.
>
> Q. That's immunity for everything having to do with the armed robbery, the death, whatever occurred on the 26th involving Mr. Juan Bueno?
>
> A. Correct.
>
> Q. And up to this point have you been charged with anything about that incident?
>
> A. No.

¶ 27. At the close of evidence, Miller requested that the court give pattern jury instruction WIS J I— CRIMINAL 246, entitled "TESTIMONY OF WITNESS GRANTED IMMUNITY." This instruction states:

> You have heard the testimony of (name of witness) who has received immunity. This means that (name of witness') testimony and evidence derived

> from that testimony cannot be used in a later criminal prosecution of (name of witness).
>
> This witness, like any other witness, may be prosecuted for testifying falsely. ·
>
> You should consider whether receiving immunity affected the testimony and give the testimony the weight you feel it deserves.

The trial court denied Miller's request, reasoning that the instruction was inapplicable because there had been no formal granting of immunity.

¶ 28. The decision to give or not to give a requested jury instruction lies within the trial court's discretion. *See State v. McCoy*, 143 Wis. 2d 274, 289, 421 N.W.2d 107, 112 (1988). We will not reverse such a determination absent an erroneous exercise of discretion. *See State v. Morgan*, 195 Wis. 2d 388, 448, 536 N.W.2d 425, 448 (Ct. App. 1995).

¶ 29. In *State v. Jones*, 217 Wis. 2d 57, 576 N.W.2d 580 (Ct. App. 1998), this court recently addressed the district attorney's power to enter into a precharging agreement with an individual not to exercise the discretionary power to prosecute in exchange for information about a criminal investigation. There, the State agreed to recommend a reduced sentence for several crimes, including attempted intentional homicide, in return for Jones's information about an unrelated double homicide. *See id.* at 59, 576 N.W.2d at 581. The State also agreed not to prosecute Jones on the double homicide if he would testify for the State about those crimes. *See id.* at 59–60, 576 N.W.2d at 581. We concluded that this agreement was properly conceived under the discretionary power of the district attorney. We did not discuss, however, under what cir-

cumstances a jury instruction concerning witness immunity is required.

¶ 30. In *State v. Nerison*, 136 Wis. 2d 37, 401 N.W.2d 1 (1987), our supreme court addressed the necessity of an immunized witness jury instruction. The court determined that a defendant's right to a fair trial is not violated by the State offering concessions in exchange for accomplice testimony against a defendant if there is

> (1) full disclosure of the terms of the agreements struck with the witnesses; (2) the opportunity for full cross-examination of those witnesses concerning the agreements and the effect of those agreements on the testimony of the witnesses; and (3) *instructions cautioning the jury to carefully evaluate the weight and credibility of the testimony of such witnesses who have been induced by agreements with the state to testify against the defendant.*

*Id.* at 46, 401 N.W.2d at 5 (emphasis added).

¶ 31. In the present case, Mirkovich was granted immunity from prosecution in exchange for providing information to the police about Bueno's murder. The nonprosecution agreement was entered into before charges were filed against Miller. As such, Mirkovich's immunity deal was a precharging decision as recognized in *Jones* and therefore not governed by § 972.08, STATS., and not subject to judicial scrutiny.

¶ 32. This court is persuaded that where an immunized witness testifies favorably for the defense, an immunized witness jury instruction is not required. We first note that *Nerison* only commands a cautionary instruction where the witness agrees with the State "to testify *against* the defendant." *Nerison*, 136 Wis. 2d at 46, 401 N.W.2d at 5 (emphasis added). There is no

corollary provision that an instruction is mandatory whenever a witness has been given a concession by the State. Second, the purpose of the instruction is to warn the jury that the witness obtained some sort of concession in exchange for his or her testimony on the State's behalf. *See State v. Smith*, 170 Wis. 2d 701, 716, 490 N.W.2d 40, 47 (Ct. App. 1992). It is important that the jury be instructed that a witness informant may have a motive to lie. *See Nerison*, 136 Wis. 2d at 46, 401 N.W.2d at 5 (citing *Hoffa v. United States*, 385 U.S. 293, 311–12 (1966)).

¶ 33. While we recognize that a cautionary instruction is normally an important part of the due process safeguards to which a defendant is entitled, these safeguards are not implicated here. Mirkovich made a deal with the State to give information about the crime to the police. Once Mirkovich provided his information, no further agreement was struck to testify for the State. *Cf. Jones*, 217 Wis. 2d at 59–60, 576 N.W.2d at 581. Instead, Miller called Mirkovich to testify on his behalf.

█

¶ 34. During his testimony, Mirkovich stated that he was not familiar with Miller and stressed that Cronin was the primary player involved in planning the robbery of Bueno. If anything, Mirkovich's testimony exculpated Miller. Case law indicates that an immunized witness jury instruction is inappropriate where a witness offers exculpatory testimony. *See United States v. Wuliger*, 981 F.2d 1497, 1508–09 (6th Cir. 1992). We therefore conclude that because the fundamental protections underlying the immunized witness jury instruction were not at play in this case, the court properly refused to instruct the jury on Mirkovich's immunity.

## D. Prior Consistent Statements

¶ 35.   Miller's final contention is that the trial court erred in admitting as evidence hearsay statements allegedly made by Goodwin to Cronin and Tameeka Goodwin concerning Miller's killing of Bueno. Because we conclude that the court properly applied the prior consistent statement exception to the hearsay rule, we reject Miller's argument.

¶ 36.   The admission of evidence is generally within the discretion of the trial court. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). We review a trial court's ruling on the admissibility of evidence for a misuse of discretion. *See State v. Buelow*, 122 Wis. 2d 465, 476, 363 N.W.2d 255, 261 (Ct. App. 1984). To sustain a discretionary ruling, we need only find that the trial court examined the relevant facts, applied a proper standard of law and, using a rational process, reached a reasonable conclusion. *See Franz v. Brennan*, 150 Wis. 2d 1, 6, 440 N.W.2d 562, 564 (1989).

¶ 37.   Goodwin testified at trial that he drove Miller and Bueno to get drugs from Bueno's house. He stated that while he was driving, Miller shot Bueno when he tried to escape from the car. Goodwin testified that later that day he went to his sister Tameeka's house, that Tameeka, Cronin and Charles Hardy were at the house, and that he told Cronin and Hardy that Miller shot Bueno.

¶ 38.   On cross-examination, Miller inquired of Goodwin whether he was at Tameeka's house after the shooting and whether Cronin and Hardy were also there. Goodwin responded that they were. Miller then asked Goodwin whether he told his brother Jeryale

that only he (Goodwin) and Bueno had gone to get drugs in Bueno's car:

Q. Did you tell Jeryale that night that just you and Juan Bueno left together in Mr. Bueno's car?

A. Could you repeat it again?

Q. Did you tell Jeryale, your brother, the night of the 26th at Tameeka's house that just you and Mr. Bueno left your Charles Street address in Mr. Bueno's car?

A. I don't remember.

Q. You don't remember if you did or not. Might you have told him that?

A. I don't think so.

Q. Possible?

A. No.

Q. No. So do you remember now?

A. It's a possibility. I don't know. I don't think so.

¶ 39. Following Goodwin's testimony, the State called Cronin, who testified that Goodwin spoke to him while at Tameeka's house.

Q. Did Mecquon say anything to you?

A. He just gave me— He reimbursed me with my money that day for the cocaine and said he didn't get no cocaine.

Q. Did he tell you what had happened?

A. He said that Mr. Bueno got shot.

Q. Who did he say did the shooting?

At this point, Miller objected to the prosecutor's question on hearsay grounds. The trial court initially

sustained the objection but then reversed its decision on the basis of prior consistent and inconsistent statements as explained in the following colloquy.

> [Prosecutor]: Your Honor, actually [Miller's] counsel questioned him on—Mr. Goodwin on this issue whether or not he said that to anyone at the home. I believe this is proper rebuttal of that impeachment.
>
> [Defense counsel]: I don't.
>
> THE COURT: Certainly the testimony of Mr. Goodwin is called into question. Prior consistent and inconsistent statements in my opinion are admissible. So I will allow it based on the fact that it's already been testified to.

Cronin then testified that Goodwin told him that Miller had shot Bueno.

¶ 40.    Later, the State called Tameeka Goodwin. The prosecutor asked her, "Did you hear your brother, Mecquon Goodwin, make any statement as to what happened that afternoon regarding Juan Bueno?" Tameeka responded, "When he came in, he was saying Earl [Miller] shot him." Miller objected to the testimony. The court overruled his objection, explaining that "[a]gain, it's really a witness whose credibility is in issue. There's case law. It's the rules of evidence. Prior consistent and inconsistent statements become admissible, so I will allow it."

¶ 41.    Hearsay evidence is ordinarily not admissible except where provided by statute or by rules adopted by the supreme court. *See* § 908.02, STATS. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted." Section 908.01(3), STATS. A statement is not hearsay if

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
> 1. Inconsistent with the declarant's testimony, or
> 2. Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

Section 908.01(4)(a). A prior consistent statement of a witness is not hearsay and may be offered for substantive purposes if: (1) the declarant testifies at trial and is subject to cross-examination concerning the statement; (2) the statement is consistent with the declarant's testimony; and (3) the statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *See Ansani v. Cascade Mountain, Inc.*, 223 Wis. 2d 39, 52, 588 N.W.2d 321, 327 (Ct. App. 1998), *review denied*, 225 Wis. 2d 489, 594 N.W.2d 383 (1999).

¶ 42. The prior consistent statement here is Goodwin's declaration to Cronin and Tameeka that Miller shot Bueno. Our first consideration under § 908.01(4)(a), STATS., is whether Goodwin testified at trial and was subject to cross-examination concerning this statement. There is no dispute that Goodwin testified at trial, but Miller argues that because Goodwin was not specifically cross-examined about the prior consistent statement, Cronin's and Tameeka's statements were inadmissible hearsay. We cannot agree. The requirement that the declarant be "subject to cross-examination concerning the statement" simply

means that the declarant must have been *subject* to cross-examination, not that the declarant must, in fact, have been *cross-examined* about the statement. As the United States Supreme Court has noted, "Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." *United States v. Owens*, 484 U.S. 554, 561 (1988) (addressing FED. R. EVID. 801(d)(1), the federal equivalent to § 908.01(4)(a)). The prior consistent statement rule gives the opponent the "*opportunity* to cross-examine the declarant on the prior statement." 7 DANIEL D. BLINKA, WISCONSIN PRACTICE: EVIDENCE § 801.4, at 423 (1991) (emphasis added). Contrary to Miller's argument, he was afforded the opportunity to and did in fact cross-examine Goodwin.

¶ 43.   Next, there is no question that Cronin's and Tameeka's testimony in court was consistent with Goodwin's testimony. Finally, we are persuaded that the statement was offered to rebut an implied charge against Goodwin of recent fabrication. During Goodwin's cross-examination, Miller repeatedly asked him whether he told his brother Jeryale that only he (Goodwin) and Bueno had gone to get drugs in Bueno's car. As the State contends, Miller's persistent questioning implied that Goodwin testified untruthfully when he stated that he told Cronin that he, Miller and Bueno had driven to Bueno's house and that Miller had shot Bueno. The cross-examination called Goodwin's credibility into question. Consequently, the State was entitled to introduce Goodwin's prior consistent state-

471

ments to rebut the implied charge that Goodwin's testimony was fabricated.[3]

*By the Court.*—Judgments affirmed.

[3] Miller also objects that the trial court never adequately explained what made Cronin's and Tameeka's responses either consistent or inconsistent statements. To the extent that the trial court's explanation was insufficient, we are satisfied that the court had an ample basis for exercising its discretion in overruling Miller's hearsay objection. *See State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983).