SEIDL, J.
¶1 Danny Benford appeals a judgment, entered upon a jury's verdict, convicting him of one count of first-degree reckless injury, one count of aggravated battery, and two counts of disorderly conduct. He also appeals an order denying his postconviction motion for a new trial.
¶2 At the time of Benford's trial, an Eau Claire County Sheriff Department's policy required all defendants appearing for trial while in custody to wear a stun belt underneath their clothing. Prior to trial, Benford expressed concerns with the use of the device and stated he would refuse to wear the device while attending his trial. The trial court held a hearing on the matter, and it ultimately ordered that Benford would be required to wear the device if he wanted to attend the trial.[1] Benford initially complied with the court's order and attended the first day of trial without incident. However, he declined to wear the stun belt during the second day of trial, and the trial proceeded without him being present.
¶3 On appeal, Benford contends that he is entitled to a new trial because: (1) the trial court erroneously exercised its discretion by ordering that he wear a stun belt to attend his trial; and (2) this erroneous decision resulted in the coerced and involuntary waiver of his constitutional and statutory rights to be present at trial. We conclude the court did not erroneously exercise its discretion by requiring Benford to wear a stun belt during the trial because the court made case-specific findings that supported its determination that such an order was necessary to ensure courtroom safety. Further, we conclude that Benford voluntarily waived his constitutional and statutory rights to be present at trial. Consequently, we affirm.
BACKGROUND
¶4 According to the criminal complaint, the charges against Benford stemmed from an incident at Positives Avenue, a facility in Eau Claire that provides services to individuals experiencing mental health issues or homelessness. Specifically, the State alleged that Benford and David[2] had a verbal dispute regarding the content of a television show. This dispute escalated into a physical confrontation, and Benford knocked David to the floor. While David was on the floor, Benford kicked and stomped on his head.
¶5 While in custody awaiting trial, Benford wrote a series of letters to the trial court expressing his frustration with law enforcement, his defense counsel, and the treatment of African Americans by the criminal justice system in general. In these letters, Benford stated that he was "emotionally distressed" and that he wished to have a "black lawyer" appointed to defend him. However, Benford's letters did not make any threats or use aggressive language toward the court.
¶6 On the first day of trial, prior to jury selection, the trial court remarked that Benford had "indicated an unwillingness to wear [a] stun belt under his clothing."[3] The court then informed defense counsel that the device was required by jail policy and asked counsel to "impress upon Mr. Benford that in order to be present during the trial ... he will need to wear [a] stun belt under his clothing."
¶7 After a brief recess, defense counsel informed the trial court that Benford continued to refuse to wear the stun belt. The State, in turn, expressed concerns regarding Benford's refusal, given that the case involved a "horrific beating." Further, the State told the court that it had advised its witnesses that Benford would "wear [a] stun belt so they would be assured of their safety."
¶8 After determining that it would not be possible for Benford to appear during the trial by video, the trial court then raised the possibility of conducting the trial without Benford present. The court stated:
[T]he Court's absolute preference is that [Benford] be here personally for his trial. He has a right to do so but not at the risk of creating [undue] safety risks for potential witnesses. And, again, this policy of his wearing a stun belt under these circumstances is not anything unusual. So if he chooses not to wear a stun belt, I don't think it leaves the Court with any real alternative but that he not be allowed to personally be present for his trial; well, at least that portion of his trial where there are others testifying. He certainly can be brought down when it's his turn to testify and give his testimony.
Additionally, the court discussed and rejected-due to concerns of potential juror prejudice-the possibility of restraining Benford by alternate means, such as shackles. The court then asked its bailiff, deputy Scott Kuehn, whether any other means of restraint were available. Kuehn responded: "Practice has been he'll wear the stun belt for the entire trial or he's not present for any of it from start of it to the end."
¶9 At this point, Benford interjected and asked the trial court, "How about I stay out of the trial? ... How about I don't testify. How about you people do your job and do what you feel is right." The court responded by explaining that Benford had a constitutional right to be present at trial, but that this right had to be weighed against the safety and security needs of the courtroom. Benford then expressed a fear of receiving a shock from the stun belt, explaining that he did not trust law enforcement and wearing the device would mean that "they are fully capable of zapping me." The court responded, "[Y]ou're going to have to wear the stun belt. If that's not something you're willing to do ... then it will be [defense counsel] who is here in your place ... but you're not going to be present. It's just that simple." Benford continued to refuse to wear the stun belt, and the court ordered him removed from the courtroom.
¶10 After a discussion with the parties regarding a possible curative jury instruction to explain Benford's absence, the trial court granted another brief recess. Following this recess, the court informed the parties that it had conducted its own research on the stun belt issue and located a case "identical to what we have here," referring to People v. Martinez , 808 N.E.2d 1089 (Ill. App. Ct. 2004). The court stated that Martinez held it was a due process violation for a judge to rely solely on jail policy when ordering a defendant to wear a stun belt. Further, the court noted that Martinez provided a nonexhaustive list of factors for a trial court to consider prior to ordering a defendant to wear a stun belt. Accordingly, the court decided to hold an evidentiary hearing "as to the security reasons for why, in this individual case, the stun belt needs to be placed on Mr. Benford."
¶11 Prior to beginning the evidentiary hearing, the trial court took judicial notice of the "pattern of letters" Benford had sent the court and of the fact that there had been a "concern" regarding Benford's competency. In addition, the State informed the court of a recent incident in Green Lake County where "a defendant refused to wear a stun belt ... and attacked the two prosecutors in the courtroom."
¶12 Once Benford was returned to the courtroom, the trial court heard testimony from Whitney Lex, a volunteer at Positive Avenues who witnessed the altercation between Benford and David. Lex testified that during the altercation she saw Benford stomping and kicking David's head. Further, she acknowledged that she would not want to be in Benford's presence unless he was restrained in some fashion. Following this testimony, the State introduced a photograph of David's injuries in order to demonstrate to the court "the level of violence" involved in the assault.
¶13 Deputy Kuehn then testified that it was standard jail policy to require any persons in custody to wear a nonvisible stun belt when they appeared at trial. He stated this policy was a "means of maintaining security and the safety of the courtroom." He asserted that simply having law enforcement present would not be adequate to ensure courtroom safety due to "personnel needs" and because "Benford has given staff in the jail security concerns about his ability to follow direction[.]" He also testified that there were no alternative means available to physically restrain Benford. Kuehn concluded his direct testimony by stating there "would be potential for a huge problem" if Benford did not wear a stun belt during his trial.
¶14 In response to questions from the trial court, Kuehn clarified that he did not have any "specific information" regarding concerns Benford had given jail staff. Rather, Kuehn stated he knew "through [general] conversations that I had with other deputies and staff in the jail, that [Benford] is a concern when he's being transported and moved throughout the facility." On cross-examination, Kuehn acknowledged that, to his knowledge, Benford had never caused any security concerns during his prior court appearances, had never attempted to escape from custody, and had never been involved in a violent incident in the jail.
¶15 The State then argued that an order requiring Benford to wear a stun belt was appropriate due to: the violent nature of the allegations against Benford; the testimony from Lex that she would be afraid to appear in the courtroom if Benford was not restrained; deputy Kuehn's "significant concerns" regarding Benford; and the "recent attack" in Green Lake County by another criminal defendant. Defense counsel responded that Benford should not have to wear a stun belt due to his history of compliant behavior at previous court appearances and his fear of being accidentally shocked. However, counsel added that he "really [didn't] want to see [Benford] in shackles either."
¶16 The trial court ultimately concluded it was appropriate to order that Benford wear a stun belt at trial. The court based its conclusion on the following findings: (1) the charges against Benford were the result of "violent and extremely dangerous behavior"; (2) Benford's young age and physical attributes would make it "[p]hysically ... very difficult" for courtroom personnel to subdue Benford if he became violent;[4] (3) there were no alternative restraint methods available that would "protect" the courtroom as effectively as a stun belt; (4) the layout of the courtroom prevented a bailiff from responding "as quickly as the stun belt"; (5) the letters Benford sent the court "indicate[d] a high level of defiance or a high level of potential disruption" if Benford became dissatisfied with the trial proceedings; and (6) shackling Benford would be unduly prejudicial.
¶17 After issuing its order, the trial court asked if Benford was "still then voluntarily deciding not to be present in the courtroom" based on the requirement that he wear a stun belt. In response, Benford asked, "[W]hat would cause me to be ... shocked like that?" To answer, the court recalled deputy Kuehn to the stand, who explained that the stun belt would not be activated unless Benford acted aggressively or attempted to escape.
¶18 Ultimately, Benford decided to wear the stun belt and attended the first day of trial, all without incident. In fact, the trial court observed that Benford interjected a number of times during the first day's proceedings and wrote down multiple questions for his counsel's review. Nevertheless, the next day Benford informed the court that he was refusing to wear the stun belt and that he wanted to fire his defense counsel. Regarding his desire to fire his counsel, Benford informed the court that he "would like an African American attorney" and that he did not want to represent himself. The court denied Benford's request, explaining that it would not appoint a new attorney in the middle of trial because there was "no reason" to do so, as the court had observed counsel "asking proper questions and presenting your case in a proper manner."
¶19 As to Benford's refusal to wear the stun belt, the trial court asked Benford if he was "going to come to court and be present in person wearing a stun belt as we did yesterday?" Benford responded, "No." After a brief exchange, the court again asked Benford if it was his intention not to be present for the remainder of the trial. Benford answered, "Yeah. That sounds right." Consequently, Benford was removed from the courtroom, and the trial proceeded without him present.
¶20 That afternoon, prior to the close of the State's evidence, the trial court conducted a colloquy with Benford-via videoconference-regarding his decision not to testify in his own defense. During this colloquy, the court again asked Benford: "And is your position still the same that you do not want to appear further for the remainder of the testimony in this case?" Benford replied, "That's correct." The State and defense both rested their cases later that afternoon.
¶21 The next day, in Benford's absence, the trial court instructed the jury, and both sides delivered their closing arguments. Benford then appeared by videoconference for the verdict. He was found guilty on all counts.
¶22 Benford filed a postconviction motion challenging his conviction on multiple grounds. As relevant to this appeal, he requested a new trial because his constitutional and statutory right to be present at trial was violated when the trial court "erroneously exercised its discretion to require him to wear a stun belt to attend trial." The postconviction court denied Benford's request for a new trial on this basis, concluding "Benford was, in fact, a potentially dangerous person and ... having the stun belt on was an appropriate way to deal with it."[5] Benford now appeals.
DISCUSSION
I. Stun Belt Order
¶23 On appeal, Benford first argues that the trial court erroneously ordered him to wear a stun belt at trial. The decision to order a defendant to wear a stun belt lies within a circuit court's discretion, and we will not disturb the court's decision unless the court erroneously exercised that discretion. State v. Ziegler , 2012 WI 73, ¶40, 342 Wis. 2d 256, 816 N.W.2d 238. A court properly exercises its discretion when it considers the facts of record, applies the proper legal standard, and reasons its way to a rational and legally sound conclusion. See id. , ¶39.
¶24 Generally, a defendant should not be restrained during trial. Id. , ¶84. However, this general rule "may give way" when a circuit court finds that restraints are necessary to maintain order, decorum and safety in the courtroom.[6] Id. A court's finding that restraints are necessary may not be based on general policy grounds alone; rather, a court must "set forth its reasons justifying the need for restraints" in a particular case. State v. Grinder , 190 Wis. 2d 541, 552, 527 N.W.2d 326 (1995). Factors that a court "should" consider include "the nature of the charges, the background of the defendant, and possible security risks in the courtroom." Id.
¶25 Benford first contends that the trial court erroneously exercised its discretion in ordering him to wear a stun belt because the court started from the presumption that jail policy required Benford to require a stun belt, and this presumption "prevented meaningful consideration of alternatives to the stun belt." For the following reasons, we disagree with Benford's contention.
¶26 First, Benford's argument that the trial court failed to give meaningful consideration to "alternatives to the stun belt" rests on the assumption that a stun belt is treated differently from other means of restraint under Wisconsin law. However, Wisconsin courts do not treat stun belts differently from other means of restraint.[7] See Ziegler , 342 Wis. 2d 256, ¶¶83-86.
¶27 In Ziegler , our supreme court upheld a circuit court's order requiring a defendant to wear a stun belt at trial. Id. , ¶91. In doing so, the court cited and relied upon-without distinction-a prior supreme court case that dealt with the use of shackles. Id. , ¶84 (citing Grinder , 190 Wis. 2d at 554-55 ). Accordingly, the relevant inquiry here is not whether the court adequately considered alternatives to a stun belt-instead, it is whether the court's conclusion that a restraint was necessary to maintain order, decorum, and safety in the courtroom was an erroneous exercise of the court's discretion. See Ziegler , 342 Wis. 2d 256, ¶84.
¶28 Second, even if we were to assume that the trial court had a duty to give "meaningful consideration" to "alternatives to the stun belt," the record belies Benford's assertion that the court failed to do so. In fact, the court explicitly discussed three alternatives to ordering that Benford wear a stun belt: (1) ordering Benford to wear visible shackles; (2) having additional courtroom security present during trial; and (3) having Benford appear during the entire trial by videoconference. However, the court then rejected each of these options, concluding that having Benford wear shackles would be unduly prejudicial; that additional security would not be as effective in maintaining order and ensuring courtroom safety as a stun belt; and that videoconference equipment would not be available at all times during the trial. Thus, Benford's claim that the court failed to consider meaningful alternatives to a stun belt lacks merit.
¶29 Third, the record also belies Benford's assertion that the trial court's decision was based on a presumption that Benford would be required to wear a stun belt. To be sure, when Benford first raised his objection to wearing the stun belt, the court stated that "[g]eneral policy is that he would wear a stun belt." However, the court then conducted its own research and made it clear that it would make an individualized determination as to whether a stun belt was necessary:
The information that was presented to me initially was that based on the sheriff's department policy in a case such as this, that a defendant, no matter who the defendant is, will be required to wear a stun belt and that really is the alternative to your being shackled in the presence of the jury. What I have determined is that I want to make a decision based on the specifics of this case, and I want to hear specific reasons for the need for the stun belt before I decide whether or not that should be a requirement[.]
(Emphasis added.) Consequently, the record shows Benford's claim that the court improperly presumed he should be required to wear a stun belt is meritless.
¶30 Benford next contends that the trial court failed to give adequate consideration to Benford's "history of appropriate courtroom behavior, his lack of prior violence, his lack of any attempts to escape, and the lack of any specific violent or disruptive conduct occurring in the jail." This argument fails because it ignores our standard of review. As set forth above, the court conducted a lengthy hearing where the court heard evidence about the very facts Benford claims were ignored. The court then made detailed findings of facts that directly related to the necessity of having Benford wear a stun belt in order to maintain the order, decorum, and safety of the courtroom. Again, these findings addressed: the violent nature of the charges against Benford; the possibility that Benford's young age and physical attributes would make it difficult for courtroom personnel to subdue Benford if he became violent; the letters Benford sent the court that indicated a high level of defiance and potential disruption; and the fact that the stun belt would not be activated unless Benford acted aggressively or attempted to escape.
¶31 Benford does not argue that these findings of fact were clearly erroneous, nor does he argue that the court's findings were not relevant to the proper legal standard. Instead, Benford simply disagrees with the trial court's findings or attributes more weight than the court to the countervailing factors set forth above. Mere disagreement with the court's ultimate decision falls far short of showing that the court did not apply a proper legal standard or relied on facts unsupported by the record. As such, Benford fails to show that the court's order requiring him to wear a stun belt was an erroneous exercise of discretion. See Ziegler , 342 Wis. 2d 256, ¶¶39-40.
II. Benford's absence from trial
¶32 Benford next argues that his right to be present at trial was violated. A defendant has both a constitutional and statutory right to be present at trial. U.S. CONST. amends. VI, XIV ; WIS. CONST. art. I, § 7 ; WIS. STAT. § 971.04 ; see also State v. Washington , 2018 WI 3, ¶26, 379 Wis. 2d 58, 905 N.W.2d 380. However, a defendant may waive both the constitutional and statutory rights to be present either by conduct or express waiver. Washington , 379 Wis. 2d 58, ¶¶27, 39. Waiver occurs when there is an intentional relinquishment or abandonment of a known right. Id. , ¶31 n.11. To be valid, a waiver of a known right must be knowing, voluntary and intelligent. See id. , ¶52. The validity of a waiver is a question of law that we review independently. See id. , ¶24.
¶33 Here, Benford does not contest that he provided an express waiver of both his constitutional and statutory rights to be present at trial; rather, he asserts that his waiver was not voluntarily given. Specifically, he argues that his absence from the second and third days of trial was not voluntary because it "was a direct result of the [trial] court's erroneous determination that Mr. Benford be required to wear the stun belt to attend trial."[8] However, we have already concluded that the trial court's order requiring Benford to wear a stun belt was not an erroneous exercise of discretion. Consequently, the basic premise underlying Benford's argument-that an erroneous order caused him to be absent from trial-is incorrect.
¶34 Properly framed, the trial court's order presented Benford with a fair and reasonable choice: decide to attend the trial wearing a stun belt to ensure the order, decorum and safety of the courtroom or refuse to wear the stun belt and be tried in absentia. When a defendant is presented with a choice between fair and reasonable alternatives, the option he or she chooses is not the result of legal coercion. See Craker v. State , 66 Wis. 2d 222, 229, 223 N.W.2d 872 (1974). In other words, a choice made between fair and reasonable alternatives is voluntary and self-imposed.
¶35 On the first day of trial, Benford chose the former alternative-to wear the stun belt and attend trial. Although he now argues that the "psychological effect of the stun belt" made the choice to continue wearing the stun belt on the second and third days of trial an "unreasonable alternative," this assertion is not supported by the record.
¶36 As noted above, the trial court observed that Benford interjected a number of times during the first day's proceedings and wrote down multiple questions for his counsel's review, all without incident. Still, in his reply brief Benford asserts that "external sources contributed to Mr. Benford's fear of unfair treatment and use of the stun belt" on the second day of trial. Yet, because he wore the stun belt without incident the previous day and nothing related to the use of the stun belt changed by the second day, this cannot be so.
¶37 Moreover, even assuming, for the sake of argument, that the psychological effects of the stun belt overwhelmed Benford on the second day of trial, that does not make the trial court's requirement that he wear a stun belt to attend trial an "unreasonable alternative." Again, the court's order that Benford be required to wear a stun belt to maintain the order, decorum and safety of the courtroom was not an erroneous exercise of the court's discretion. Therefore, regardless of Benford's subjective concerns about the stun belt, the requirement that Benford wear the device to attend trial was a fair and reasonable alternative to Benford choosing not to wear the device and being tried in absentia. Consequently, Benford's waiver of his right to be present at trial was voluntary, not the result of legal coercion. See Craker , 66 Wis. 2d at 229.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

The Honorable Brian Wright presided over Benford's trial, and the Honorable John Manydeeds presided over Benford's sentencing and postconviction proceedings. For clarity, we refer to Judge Wright as the trial court and to Judge Manydeeds as the postconviction court for the remainder of this opinion.

Pursuant to the policy underlying Wis. Stat. Rule 809.86 (2017-18), we refer to the victim using a pseudonym. All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The record does not indicate who informed the trial court that Benford was refusing to wear the stun belt. However, we note that defense counsel apparently did not have the opportunity to raise the issue prior to the first day of trial, as counsel responded to the court's remark: "I was not made aware of this until right as we were coming into court." In any event, the source of the court's knowledge is immaterial to this opinion, and we will not discuss the issue further.

The trial court did not elaborate on what it meant by "physical attributes." However, the record indicates Benford was six feet, two inches tall and 165 pounds at the time of his arrest.

The postconviction court granted the alternative relief Benford requested in his postconviction motion, which included: (1) dismissal of the substantial battery conviction on multiplicity grounds; (2) sentence modification; and (3) a court order for Benford to perform community service in lieu of paying monetary court costs.

The State, relying on State v. Ziegler , 2012 WI 73, ¶¶85-86, 342 Wis. 2d 256, 816 N.W.2d 238, argues that because it is undisputed that the stun belt was not visible to the jury, the trial court had no duty to inquire into the necessity of the stun belt. However, we need not address this issue because after Benford objected to wearing the stun belt, the court did, in fact, inquire into the necessity of requiring Benford to wear the stun belt. Thus, we confine our discussion to whether the court's decision requiring Benford to wear a stun belt was an erroneous exercise of its discretion. See State v. Blalock , 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the narrowest possible ground).

Relying on a number of out-of-state cases, see, e.g. , Wrinkles v. State , 749 N.E.2d 1179, 1194 (Ind. 2001), Benford advances a public policy argument as to why stun belts should be treated differently from other means of restraint. However, the court of appeals is an "error correcting" court and should not set policy on issues adequately addressed by existing precedent. See Cook v. Cook , 208 Wis. 2d 166, 188, 560 N.W.2d 246 (1997). Because our supreme court has declined to treat stun belts differently from other means of restraint, we will not further consider Benford's public policy arguments against the use of stun belts.

We note that although Benford also expressed dissatisfaction with defense counsel prior to the second day of trial, on appeal he concedes that "there is no indication in the record that he absented himself from trial because he was unhappy with his trial attorney's representation."